624 A.2d 125

**COMMONWEALTH of Pennsylvania**

v.

**Max Evan BOWSER, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 18, 1992.

Filed April 14, 1993.

28

Simon B. John, Uniontown, for appellant.

Ralph C. Warman, Dist. Atty., Uniontown, for Com., appellee.

Before ROWLEY, President Judge, and JOHNSON and HESTER, JJ.

HESTER, Judge.

Max Evan Bowser appeals from the judgment of sentence entered in the Court of Common Pleas of Fayette County on April 27, 1992, after a jury convicted him of numerous offenses in connection with an automobile accident involving a fatality. Appellant was sentenced to an aggregate term of imprisonment of four to nine years, ordered to attend alcohol-safe driving school, directed to make restitution, and commanded to pay various fines and costs.[1] In this timely appeal, he contends that the trial court erroneously declined to suppress evidence pertaining to his refusal to submit to blood and breath tests following the accident. In addition, appellant asserts that the court incorrectly rejected his request for a change of venue, refused him permission to inform the jury of the potential applicability of a mandatory minimum sentencing provision, and denied certain points for charge. Appellant also raises several challenges to the sufficiency of the evidence and questions the propriety of both his sentence and various evidentiary rulings. For the reasons set forth below, we partially vacate the judgment of sentence.

The procedural history of this case may be summarized as follows. On June 8, 1990, approximately two months after his initial arrest in connection with a two-vehicle accident involving a fatality, appellant was re-arrested and charged with homicide by vehicle, driving while under the influence, and homicide by vehicle while driving under the influence. He also was charged with various summary offenses, including reckless driving, driving at an unsafe speed, driving on the right side of the roadway, and meeting vehicles proceeding in the opposite direction.

In the months following his second arrest, appellant filed both pretrial and supplemental pretrial motions in an effort to obtain, *inter alia,* the suppression of evidence pertaining to his refusal to submit to tests utilized for the determination of blood alcohol content. On February 27, 1991, the trial court denied appellant's requests for relief. Two months later,

---

1. In addition, his driver's license was suspended for a period of one year.

appellant sought permission to file *nunc pro tunc* an omnibus pretrial motion requesting a change of venue. The court subsequently denied the requested permission without prejudice to appellant's right to challenge venue during voir dire.

On February 3, 1992, following the examination of a pool of potential jurors, appellant orally moved for a change of venue. The trial court denied that motion, and a jury was empanelled. Three days later, the jury convicted appellant of the various charged offenses. Appellant subsequently filed unsuccessful post-verdict motions, and the trial court imposed the described sentence. This appeal followed the denial of appellant's motion to modify sentence.

■ We first consider appellant's challenges to the sufficiency of the evidence. These challenges, which relate to his convictions for homicide by vehicle, driving while under the influence, and homicide by vehicle while driving under the influence, are devoid of merit. In *Commonwealth v. Hardcastle*, 519 Pa. 236, 246, 546 A.2d 1101, 1105 (1988), our Supreme Court discussed the well-established test utilized for determining the sufficiency of the evidence and stated:

> The test for determining the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner and drawing all proper inferences favorable to the Commonwealth, the [factfinder] could reasonably have determined all elements of the crime to have been established beyond a reasonable doubt. *Commonwealth v. Syre*, 507 Pa. 299, 489 A.2d 1340 (1985). This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. *Commonwealth v. Sullivan*, 472 Pa. 129, 150, 371 A.2d 468, 478 (1977); *Commonwealth v. Farquharson*, 467 Pa. 50, 354 A.2d 545 (1976); *Commonwealth v. Cox*, 466 Pa. 582, 353 A.2d 844 (1976).

*See also Commonwealth v. Scott*, 376 Pa.Super. 416, 546 A.2d 96 (1988). Accordingly, we must examine the evidence and determine whether it is sufficient to support the convictions in question. Our review of the record reveals the following facts.

On the evening of May 10, 1990, a vehicle containing appellant rounded a blind curve on Alicia Road in Luzerne Township. This vehicle, which was proceeding between thirteen and thirty-nine miles per hour over the posted speed limit, crossed a double-yellow line and collided head-on with an automobile operated by Gina Marie Furlong. During the course of this collision, Ms. Furlong suffered injuries which resulted in her death.

Shortly after the accident, David Waters arrived on the scene. He subsequently removed Ms. Furlong from her burning automobile and placed her in the back of his truck. Mr. Waters then proceeded to appellant's vehicle and attempted to remove him from the wreckage. However, appellant, who was clutching the steering wheel, became belligerent. Mr. Waters eventually utilized force to remove appellant from the vehicle. Mr. Waters, who opined at trial that appellant was intoxicated, then walked him to the side of the road.

Following the arrival of Chief Donald Eadie of the Luzerne Township Police Department, Mr. Waters identified appellant as one of the two drivers involved in the accident. Chief Eadie, who noticed that an odor of alcohol emanated from appellant, requested him to perform several field sobriety tests. After appellant completed the field sobriety tests, Chief Eadie arrested him. He then advised appellant of the implied consent law and asked him if he would consent to a breathalyzer test. As appellant replied in the affirmative, Chief Eadie drove him to the Belle Vernon State Police Barracks, where Trooper Brian Burden explained both the implied consent law and the nature of the breathalyzer test. A short while later, Trooper Burden administered the test. However, since appellant failed to provide a sufficient breath sample, the trooper discontinued the test and treated appellant's actions as a refusal of consent. Thereafter, Chief Eadie drove appellant to Brownsville General Hospital, where he refused to submit to a blood alcohol test.

The crime of homicide by vehicle requires the Commonwealth to prove:

that (1) the Appellant drove in a manner that violated the Motor Vehicle Code, (2) the Appellant knew or should have known that his conduct violated the law and (3) the death was the probable result of the Motor Vehicle Code violation. *Commonwealth v. Uhrinek,* 518 Pa. 532, 544 A.2d 947 (1988); *See also In the Interest of Hyduke,* 371 Pa.Super. 380, 538 A.2d 66 (1988).

*Matter of Huff,* 399 Pa.Super. 574, 582, 582 A.2d 1093, 1097 (1990), *aff'd,* 529 Pa. 442, 604 A.2d 1026 (1992). In addition, we note that the Commonwealth is required to establish that the violation of the Motor Vehicle Code amounted to a gross deviation from the standard of care that a reasonable person would observe under the circumstances. *See Commonwealth v. Heck,* 517 Pa. 192, 535 A.2d 575 (1987).

In the present case, the facts demonstrate that appellant violated 75 Pa.C.S. § 3301, which relates to driving on the right side of the roadway, by driving his vehicle across double-yellow lines and on to the portion of the roadway reserved for on-coming traffic. In addition, we note that appellant unquestionably should have known that his conduct, which resulted in the death of Ms. Furlong, violated the law since it contravened one of the most basic principles relative to the operation of motor vehicles. Moreover, we believe that the act of crossing a double-yellow line when rounding a blind curve grossly deviates from the standard of care that a reasonable person would observe under the circumstances as it involves an easily discernible risk that a fatal collision may result. Accordingly, we conclude that the evidence presented by the Commonwealth is sufficient to support appellant's conviction for homicide by vehicle.

We now address the crimes of driving while under the influence and homicide by vehicle while driving under the influence. With respect to those offenses, appellant asserts that the evidence presented at trial is insufficient to support a determination of guilt since it fails to establish that he operated one of the vehicles while intoxicated. However, our review of the facts demonstrates that appellant was discovered clutching the steering wheel of one of the vehicles following the

accident and that Mr. Waters believed him to be intoxicated. Clearly, these facts are sufficient to support a determination regarding the operation of a motor vehicle while intoxicated.

Appellant also claims that the trial court erroneously declined to suppress evidence pertaining to his refusal to submit to tests utilized for the determination of blood alcohol content.

> In reviewing such a claim, we must consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. *Commonwealth v. Kichline,* 468 Pa. 265, 280–81, 361 A.2d 282, 290 (1976). If the record supports the factual findings of the suppression court, as well as the legitimacy of the inferences and legal conclusions drawn from those findings, they may not be disturbed on appeal. *Commonwealth v. O'Bryant,* 479 Pa. 534, 537, 388 A.2d 1059, 1061, *cert. denied,* 439 U.S. 990, 99 S.Ct. 589, 58 L.Ed.2d 664 (1978). "It is, however, exclusively the province of the suppression court to determine the credibility of the witnesses and the weight to be accorded to their testimony." *Commonwealth v. Neely,* 298 Pa.Super. 328, 341, 444 A.2d 1199, 1205 (1982).

*Commonwealth v. Mason,* 415 Pa.Super. 22, 24, 608 A.2d 506, 507 (1992). Keeping these principles in mind, we must examine the facts adduced during the course of the suppression hearing, consider the various assertions relied upon by appellant in support of suppression, and determine whether the trial court properly refused the requested relief. Our examination of the evidence adduced at the suppression hearing reveals the following facts.

On the evening of May 10, 1990, Chief Donald Eadie of the Luzerne Township Police Department arrived on the scene of an automobile accident, noted the presence of officers of the Brownsville Police Department, and observed one of the two damaged Fords engulfed in flames. After conducting a brief investigation, Chief Eadie entered a Brownsville Police cruiser containing appellant and asked him a few questions. In response, appellant indicated that he was uninjured and asserted that he had not been the operator of or a passenger in

either of the vehicles in question. Immediately thereafter, David Waters, the first person to arrive at the accident site, contradicted appellant by identifying him as one of the drivers that he pulled from the wreckage.

Following Mr. Waters's identification, Chief Eadie, who noticed that appellant smelled of alcohol and had bloodshot eyes and slurred speech, asked him to perform some field sobriety tests. Appellant consented and performed several tests. After staggering during a ten-pace walk, appellant was taken into custody and informed of Pennsylvania's implied consent law. As he drove appellant to the Belle Vernon State Police Barracks, Chief Eadie advised him of his *Miranda [v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) ] rights and indicated that those rights had no applicability to the administration of a breathalyzer test.

Shortly after appellant and Chief Eadie arrived at the state police barracks, Trooper Brian Burden advised appellant of Pennsylvania's implied consent law. Appellant, who indicated that his leg hurt, subsequently consented to take a breathalyzer test.[2] However, when Trooper Burden administered the test, appellant failed to provide an adequate breath sample. Accordingly, the trooper discontinued the test and treated appellant's actions as equivalent to a refusal of consent. Later, Chief Eadie drove appellant to Brownsville General Hospital. While at the hospital, appellant declined to provide a blood sample for purposes of blood alcohol testing.

■ Appellant, relying upon evidence indicating that he suffered a broken rib in the accident, asserts that the trial court improperly failed to suppress testimony pertaining to his refusal to submit to the breathalyzer test since he physically was incapable of producing the necessary breath sample. Even if we assumed the truthfulness of the medical evidence relied upon by appellant, we would find his claim devoid of

2. We note that appellant adduced testimony at the suppression hearing which established that he suffered both a broken ankle and a broken rib in the accident. However, an examination of the record demonstrates that it is devoid of evidence indicating that he complained of pain emanating from the rib injury either prior to or contemporaneously with the administration of the breathalyzer test.

merit. Although the evidence in question establishes that he suffered a broken rib, it fails to demonstrate that this injury hindered his ability to produce the breath sample necessary for the completion of the breathalyzer test. Consequently, the evidence fails to support appellant's claim of a causal nexus between his injury and the refusal.

■ ·Appellant next asserts that the trial court improperly failed to suppress evidence pertaining to his refusal to submit to a blood alcohol test at Brownsville General Hospital since the results of such a test would have been inadmissible under *Commonwealth v. Modaffare*, 529 Pa. 101, 601 A.2d 1233 (1992). However, our examination of *Modaffare* reveals that it disposed of a single sufficiency issue relating to the establishment of the blood alcohol content necessary to support a conviction for driving while under the influence.[3] Thus, as that case contains no discussion of matters affecting the suppressibility of blood test results, appellant's claim of error must fail.

■ Appellant also asserts that the trial court erroneously neglected to suppress evidence relating to the two previously discussed refusals because he was not properly advised of his *Miranda* rights before being asked to submit to alcohol content tests. Even if we assumed that the warnings in question were not properly given, appellant's assertion would fail. It is clear that persons arrested for operating motor vehicles while under the influence of alcohol need not be given *Miranda* warnings before being asked to submit to testing for blood alcohol content. Indeed, we note that in cases where *Miranda* warnings actually are given, the police have an.affirmative duty to inform the arrestee that he has no right to counsel

---

3. Specifically, the Supreme Court of Pennsylvania held in *Modaffare* that evidence of a blood alcohol test taken nearly two hours after an accident was insufficient to support a conviction for operating an automobile while possessing a blood alcohol content either equal to or exceeding 0.10%. In support of this conclusion, the Court relied upon the lapse of time between the accident and the test, the slight amount by which the test result exceeded the requisite level, and expert testimony adduced by the Commonwealth which indicated that defendant's blood alcohol content may have been below the 0.10% level at the time of the accident.

in connection with such testing. *See Commonwealth v. Danforth,* 530 Pa. 327, 608 A.2d 1044 (1992).

We now consider appellant's challenge to the denial of his request for a change of venue due to pretrial publicity. Our standard for reviewing such a challenge is well-established.

> The grant or refusal of a change of venue is within the sound discretion of the trial court, which is in the best position to assess the community feeling, and it will not be disturbed absent an abuse of discretion. *Commonwealth v. Tedford,* 523 Pa. 305, 321, 567 A.2d 610, 618 (1989); *Commonwealth v. Buehl,* 510 Pa. 363, 508 A.2d 1167 (1986). In *Commonwealth v. Kichline,* 468 Pa. 265, 274, 361 A.2d 282, 287 (1975), the supreme court stated that "[i]n reviewing the trial court's decision, the only legitimate inquiry is whether any juror formed a fixed opinion of appellant's guilt or innocence as a result of the pre-trial publicity." In *Commonwealth v. Casper,* 481 Pa. 143, 151–52, 392 A.2d 287, 291–92 (1978), the court stated, "It is clear that the mere existence of pre-trial publicity does not warrant a presumption of prejudice. Similarly, a possibility that the prospective jurors will have formed an opinion based on news accounts will not suffice." Nevertheless, there are times when pretrial publicity is so pervasive and inflammatory that the accused is relieved of establishing actual juror prejudice.
>
> > Pre-trial prejudice is presumed if: (1) the publicity is sensational, inflammatory, and slanted toward a conviction rather than factual and objective; (2) the publicity reveals the accused's prior record, if any, or if it refers to confessions, admissions, or reenactments of the crime by the accused; *and* (3) the publicity is derived from police and prosecuting officer reports.
>
> *Commonwealth v. Pursell,* 508 Pa. 212, 221, 495 A.2d 183, 187 (1985) (emphasis added).

*Commonwealth v. Patterson,* 392 Pa.Super. 331, 349–50, 572 A.2d 1258, 1268 (1990). In the present case, our examination of the record reveals that the alleged pretrial publicity, which

consisted of several newspaper articles, was not included in the record. Accordingly, we find that appellant's challenge to the denial of his venue request has been waived. *See Commonwealth v. Patterson, supra.* Moreover, we note that even if the challenge were reviewable, we would find it devoid of merit.

■ Our review of appellant's argument reveals no claim of actual prejudice regarding the various empanelled jurors. Thus, resolution of the issue posed by appellant depends upon whether we may presume the existence of pretrial prejudice stemming from the challenged publicity, which ended approximately ten months after the accident. Even if we assumed that the publicity in question met the standard for the presumption of pretrial prejudice, appellant's claim would fail. Since appellant's trial did not begin until February 3, 1992, eleven months after the last of the contested publicity had been disseminated, we conclude that any potential prejudice had dissipated by the time that proceeding began. *See Commonwealth v. Kichline, supra* (six months is sufficient "cooling down" period after prejudicial pretrial publicity); *Commonwealth v. Galloway,* 495 Pa. 535, 434 A.2d 1220 (1981) (five and one-half month time period sufficient for prejudice to dissipate).

Appellant also challenges the propriety of several evidentiary rulings made by the trial court. Keeping in mind that "[m]atters relating to the admissibility of evidence are controlled by the trial court's discretion and [that] an appellate court will not reverse the trial court's ruling absent a clear abuse of discretion[,]" *Commonwealth v. Cody,* 401 Pa.Super. 85, 90, 584 A.2d 992, 994 (1991), we consider the merits of appellant's claims.

■ Appellant asserts that the trial court improperly permitted David Waters, a lay person, to testify that he has driven around a curve at the accident site at sixty miles per hour. In support of this assertion, appellant contends that the Commonwealth laid no foundation for opinion testimony on the

issue of speed.[4] This claim is devoid of merit. As the contested testimony merely recounted the factual matter of how fast Mr. Waters has driven around the curve, it clearly did not constitute opinion testimony and thus, required no foundation for its admission.

Appellant also asserts that the trial court erroneously permitted Mr. Waters to opine that appellant was intoxicated on the evening of the accident. In support of this assertion, which we find devoid of merit, he contends that the contested opinion improperly embraced an ultimate issue in the case and was not supported by the requisite foundation.

Intoxication is a matter of common knowledge, and opinions given by lay people are permissible on the issue. *Commonwealth v. Reynolds,* 256 Pa.Super. 259, 389 A.2d 1113 (1978). However, the lay witness must have sufficient facts on which to base his opinion before he can express an opinion on another's intoxication. *Commonwealth v. Hughes,* 480 Pa. 311, 389 A.2d 1081 (1978). *See also Commonwealth v. Summers,* 269 Pa.Super. 437, 410 A.2d 336 (1979) (court concludes witness' observations of the way the person looked and the way he was walking provided sufficient factual basis for witness to conclude a person was intoxicated). The court also looks to the witness' personal knowledge and observation. *Commonwealth v. Davenport,* 255 Pa.Super. 131, 386 A.2d 543 (1978).

*Commonwealth v. Womack,* 307 Pa.Super. 396, 408, 453 A.2d 642, 648 (1982). In addition, we note that lay opinion testimony embracing an ultimate issue in a case is admissible as long as the witness perceived the events upon which his opinion is based. *See Commonwealth v. Neiswonger,* 338 Pa.Super. 625, 488 A.2d 68 (1985).

4. We note that appellant's brief indicates that Mr. Waters testified "that he could drive around the curve at the scene of the accident at a speed of 60 miles per hour." Appellant's brief at 22. This characterization of Mr. Waters's testimony is not entirely accurate. Our review of the record reveals that Mr. Waters mentioned that he, on various occasions, has taken the curve at sixty miles per hour. Notes of Testimony ("N.T."), 2/3/92, at 32.

In the present case, Mr. Waters, the first person to arrive at the scene of the accident, testified that he observed appellant sitting in the driver's seat of his automobile clutching the steering wheel. In addition, Mr. Waters indicated that appellant's automobile was close in proximity to one engulfed in flames, that a strong odor of alcohol emanated from appellant, that appellant responded with belligerence to attempts to remove him from the vehicle, and that the utilization of force was necessary to accomplish that task. Finally, Mr. Waters testified that he previously had observed intoxicated individuals.

Based upon Mr. Water's prior experience with intoxicated individuals and his testimony regarding both the smell of alcohol and appellant's actions, the trial court correctly could have concluded that the contested opinion had a sufficient factual basis. Moreover, as that opinion clearly was based upon Mr. Waters's personal observations, it properly could embrace an ultimate issue of fact. Thus, as we find that the trial court committed no abuse of discretion in admitting the opinion testimony in question, appellant's claim of error must fail.

Appellant next asserts that the trial court improperly permitted Pennsylvania State Trooper Brian Burden to opine that appellant was intoxicated at the time of the accident. This assertion is unsupported by the record and accordingly, must fail.

Our examination of the record reveals that the Commonwealth made no specific request for the trooper's opinion regarding appellant's state of sobriety at the time that he was engaged in the operation of his motor vehicle. Rather, it establishes that the Commonwealth generically asked the trooper to utilize both his experience and personal observations to render an opinion as to whether appellant was intoxicated. N.T., 2/4–6/92, at 60. Since the Commonwealth's generic request was made after much testimony had been adduced regarding matters occurring at the Belle Vernon State Police Barracks, it is clear that the opinion requested related to the time in which appellant was in that facility.

Thus, we find that the trooper's response, which also is generic, embraces that time period.

 Appellant asserts that the trial court erroneously permitted the Commonwealth to elicit expert testimony from Pennsylvania State Trooper Beverly Ashton regarding her reconstruction of the accident. In support of this assertion, appellant contends that Trooper Ashton lacked the background necessary to qualify her as an expert in field of accident reconstruction and alleges that her opinions were based upon hearsay information. We initially address the qualification aspect of appellant's assertion.

In *Commonwealth v. Pearsall*, 368 Pa.Super. 327, 332, 534 A.2d 106, 109 (1987), *overruled on other grounds, Commonwealth v. Garcia*, 403 Pa.Super. 280, 588 A.2d 951 (1991) (*en banc*), we considered the propriety of a trial court's decision to permit certain expert testimony and stated:

> To qualify as an expert witness, a witness need only have a "reasonable pretension to specialized knowledge," on a subject for which expert testimony is admissible. *Commonwealth v. Washington*, 235 Pa.Super. 339, 340 A.2d 896 (1975). An expert's pretension to specialized knowledge may be based upon practical, occupational, or other experiential training; the expert need not have gained expertise through academic training. *Commonwealth v. Ellis*, 354 Pa.Super. 11, 510 A.2d 1253 (1986); *Commonwealth v. Daniels*, 280 Pa.Super. 278, 421 A.2d 721 (1980).

Utilizing these principles, we must examine the record and determine whether Trooper Ashton possessed sufficient knowledge of the field of accident reconstruction to qualify her as an expert.

During the course of voir dire, Trooper Ashton indicated that she received basic training in accident investigation after joining the Pennsylvania State Police. The trooper also testified that she received advanced training in that subject and was assigned to various areas in western Pennsylvania as a member of the traffic unit, which enforces the motor vehicle laws and investigates accidents. In addition, Trooper Ashton

stated that she attended an accident reconstruction course offered by the Pennsylvania Department of Education, completed a course dealing with special problems in accident reconstruction, and performed six full reconstructions. Finally, she indicated that she is a member of the National Association of Professional Accident Reconstruction Specialists.

Although the record contains no testimony indicating that Trooper Ashton possessed an engineering degree, we believe that the trial court properly could have concluded that her training and experience provided her with sufficient knowledge to testify as an expert in the field of accident reconstruction. Accordingly, appellant's claim to the contrary must fail.

 We now address appellant's claim that Trooper Ashton's opinions were based upon inadmissible hearsay evidence. In support of this claim, appellant relies upon testimony in which the trooper indicated that she obtained from a local Ford dealership the book sizes and weights of the two Fords involved in the accident for purposes of computing their relative speeds at impact.

While the opinion of an expert generally must be based upon facts which either are admitted or established by the evidence, it is clear that expert opinions also may be based upon data not admissible into evidence if it is of a type reasonably relied upon by experts in a particular field. *See Douglass v. Licciardi Construction Co.,* 386 Pa.Super. 292, 562 A.2d 913 (1989); *Kearns by Kearns v. DeHaas,* 377 Pa.Super. 200, 546 A.2d 1226 (1988); *Bolus v. United Penn Bank,* 363 Pa.Super. 247, 525 A.2d 1215 (1987); *Commonwealth v. Haddle,* 271 Pa.Super. 418, 413 A.2d 735 (1979). In the present case, it is uncontested that the published information which Trooper Ashton obtained from the Ford dealership and utilized in rendering her opinion constituted inadmissible hearsay. Thus, resolution of the issue hinges upon whether the information was of a type reasonably relied upon by experts in the field of accident reconstruction.

It is impossible for an accident reconstructionist to know the essential data pertaining to every make and model automobile.

Thus, we believe that such experts reasonably could rely upon the publications of automobile manufacturers to determine the size and weight of specific models involved in mishaps. Accordingly, as we conclude that Trooper Ashton's use of the book information in the formulation of her opinion had no impact upon the admissibility of her testimony, we decline to disturb the trial court's decision to admit it.

Appellant also asserts that the trial court erroneously permitted the Commonwealth to introduce the testimony of Robert Dearth, David Townsend, and Patrick Ballon because their testimony was cumulative to other evidence pertaining to an alcoholic odor emanating from appellant's person on the evening of the accident. However, as our examination of the record reveals that only Mr. Dearth testified regarding the existence of the odor in question, our analysis will be limited to his testimony.

During the course of his testimony, Mr. Dearth, who is both a member of the Hiller Volunteer Fire Company and an emergency medical technician, described both the scene of the accident and the visible injuries suffered by the second driver, Gina Marie Furlong. He also indicated that he attended to Ms. Furlong until the arrival of other EMTs. In addition, Mr. Dearth testified that he walked to a Brownsville Police cruiser, where he both saw appellant and noticed an odor of alcohol on his breath. Finally, Mr. Dearth, who remained on the scene until proceeding to the landing area of an emergency helicopter, stated that appellant indicated that he was uninjured, did not wish to go to the hospital, and would not sign a release.

As we have demonstrated, Mr. Dearth's testimony, while indicating that an odor of alcohol emanated from appellant, also related to a number of other matters. Thus, the trial court properly could have concluded that the testimony was not cumulative on the basis asserted by appellant. Accordingly, this allegation of error must fail.

Appellant's final evidentiary issue concerns the propriety of a trial court ruling which granted the Commonwealth permission to cross-examine character witnesses regarding his

admission into an ARD program following an arrest for driving while under the influence. As a result of this ruling, appellant declined to present evidence relating to his reputation in the community as a moral and law-abiding citizen.

■ Our courts long have admitted evidence indicating that an accused possesses character traits inconsistent with the alleged criminal behavior for which he is on trial. *See Commonwealth v. Nellom*, 388 Pa.Super. 314, 565 A.2d 770 (1989). A defendant who presents character witnesses runs the same risk attendant with the presentation of other witnesses—that of cross-examination. *Id.* Once a defendant utilizes character witnesses to place in issue his reputation as a moral and law-abiding citizen, the Commonwealth may cross-examine those witnesses regarding their knowledge of his prior instances of bad conduct. Although such cross-examination may relate to conduct resulting in criminal convictions, *see id.*, it may not embrace matters involving mere arrests since the fact of an arrest is consistent with both guilt and innocence. *See Commonwealth v. Scott*, 496 Pa. 188, 436 A.2d 607 (1981).

In the present case, the trial court granted the Commonwealth permission to inquire into an incident which resulted in appellant's admission into an ARD program. While it is clear that admission into an ARD program generally is not equivalent to a conviction, it equally is clear that the successful completion of such a program is not consistent with a finding of innocence. *See DeNillo v. DeNillo*, 369 Pa.Super. 363, 535 A.2d 200 (1987). Indeed, we note that admission into ARD may be deemed a conviction for certain purposes. *See* 75 Pa.C.S. § 3731(e)(2) (admission into ARD considered first conviction for determining proper punishment for DUI offense). Thus, contrary to appellant's claim, we find that the trial court properly granted the Commonwealth permission to conduct the cross-examination in question.

■ Appellant next asserts that the trial court erroneously refused him permission to present argument to the jury regarding the potential applicability of a mandatory minimum

sentencing provision. However, as the question of punishment is one left to the court and may not be considered by jurors during the course of deliberations, *see Commonwealth v. Waters*, 334 Pa.Super. 513, 483 A.2d 855 (1984), we find that appellant's assertion of error entitles him to no relief.

We now address appellant's assertion that the trial court improperly denied several points for charge. In *Commonwealth v. Sanders*, 380 Pa.Super. 78, 95, 551 A.2d 239, 247–48 (1988), we set forth the standard utilized for considering the propriety of such denials and stated:

> It is well-settled that a jury charge must be viewed as a whole to assess if it adequately guided the jury in the performance of its fact-finding duty. *Commonwealth v. Rodriguez*, 343 Pa.Super. 486, 495 A.2d 569 (1985). The trial court need not charge the jury pursuant to every request made of it. *Id.* In charging the jury the trial court's chief duty is to clarify the issues to be resolved; moreover the law must be accurately and clearly stated *Commonwealth v. Newman*, 323 Pa.Super. 394, 470 A.2d 976 (1984).

Relying upon these principles, we consider the various claims raised by appellant.

Appellant contends that the trial court improperly declined to charge the jury that a motorist has a right to refuse a breath test and that such a refusal may not be considered during deliberations. In support of this contention, appellant argues that *Commonwealth v. Modaffare, supra*, and its companion case, *Commonwealth v. Jarman*, 529 Pa. 92, 601 A.2d 1229 (1992), rendered his refusal inadmissible into evidence. As we previously have demonstrated, *Modaffare* relates to a single sufficiency claim regarding the blood alcohol content necessary to support a DUI conviction and contains no language pertaining to the admissibility of blood test results. The same is true with *Jarman*. Moreover, we note that the contested instruction is contrary to 75 Pa.C.S. § 1547(e), which permits the jury to consider a defendant's refusal to submit to chemical testing in conjunction with other

circumstances. Accordingly, appellant's claim of error must fail.

 Appellant also contends that the trial court improperly declined to instruct the jury that he could not be found guilty of homicide by vehicle if the jury determined that the death of the second driver, Gina Marie Furlong, resulted not from his actions but rather from either Ms. Furlong's failure to wear a seat belt or a defect in the roadway.[5] This contention is devoid of merit.

In instructing the jury on the offense of homicide by vehicle, the trial court noted that the Commonwealth premised its case upon appellant's violation of several provisions of the Motor Vehicle Code. In addition, the court described those provisions and stated:

> Now, in order to find the defendant guilty of vehicular homicide or homicide by vehicle, you must be satisfied that the following four elements have been proven beyond a reasonable doubt: The first element of homicide by vehicle is that the defendant drove a vehicle upon a highway in a manner that violates one of the four sections of the Vehicle Code that I just defined for you. The second element is that under the circumstances the defendant acted recklessly or with gross negligence by driving in a manner that violated any one of those four sections. The third element is that Gina Marie Furlong is dead, and the fourth element is that defendant's violation of one or more of those sections of the Vehicle Code was a direct cause of her death.

N.T., 2/4–6/92 at 222.

As a reading of the court's charge demonstrates, the charge clearly informed the jury that appellant's actions had to be a direct cause of Ms. Furlong's death to support a conviction for homicide by vehicle. Thus, it advised the jury that appellant could not be convicted of homicide by vehicle if the jury determined that appellant's actions were not a major cause of either the accident or the resulting death. Since the trial

---

5. We note that appellant raised the two matters in separate points for charge. However, for purposes of convenience, we consider them as if they originally had been part of a single proposed instruction.

court essentially apprised the jury of the matters at issue, and a court need not charge pursuant to every request, we find that appellant's claim of error entitles him to no relief.

Next, appellant asserts that the trial court improperly refused a point for charge indicating that the jury must find gross negligence in order to find him guilty of homicide by vehicle. However, as our previous recitation of the court's charge indicates, the charge advised the jury of that requirement. Thus, since a trial court need not charge pursuant to every request made, appellant's claim of error must fail.

■■■ Appellant's final claim regarding the court's jury instructions concerns its denial of several points for charge relating to the presumption of innocence. Appellant asserts that the language of the instruction utilized by the court did not amply inform the jury that he was clothed with a presumption of innocence which could be overcome only by a finding of guilt by a reasonable doubt.

During the course of its charge, the trial court informed the jury of the presumption of innocence and the Commonwealth's burden of proof by stating:

A fundamental principle of our system of criminal law is that the defendant is presumed to be innocent. The mere fact that he is arrested and charged with a crime is not evidence of his guilt.

Furthermore, a defendant is presumed to remain innocent throughout the trial unless and until you conclude, based on careful and impartial consideration of the evidence, that the Commonwealth has proven him guilty beyond a reasonable doubt. This means that it is not the defendant's burden to prove that he is not guilty. Instead, it is the Commonwealth that always has the burden of proving each and every element of the crimes charged and that the defendant is guilty of those crimes beyond a reasonable doubt.

A person accused of a crime is not required to present evidence or prove anything in his own defense. Under our system of law, if the evidence presented by the Commonwealth fails to meet its burden, then your verdict must be not guilty. On the other hand, if the evidence does prove

beyond a reasonable doubt that the defendant is guilty of the crimes charged, then your verdict should be guilty.

Now, although the Commonwealth has the burden of proving that the defendant is guilty, this does not mean that the Commonwealth must prove its case beyond all doubt or to a mathematical certainty, nor must the Commonwealth demonstrate the complete impossibility of innocence. A reasonable doubt is a doubt that would cause a reasonably careful and sensible person to hesitate or refrain from acting upon some matter of the highest importance in your [sic] own daily life. A reasonable doubt must fairly arise out of the evidence presented or the lack of evidence presented with respect to one of the elements of the crimes charged. A reasonable doubt must be a real doubt. It may not be an imagined one nor one manufactured to avoid carrying out an unpleasant duty.

N.T., 2/4–6/92, at 212–13.

We find that the charge set forth above, which tracks the language of Pennsylvania Standard Suggested Jury Instruction (Criminal) 7.01,[6] clearly and completely advised the jury of appellant's presumption of innocence and the Common-

---

**6.** Pennsylvania Standard Suggested Jury Instruction (Criminal) 7.01 states:

(1) A fundamental principle in our system of criminal law is that the defendant is presumed to be innocent. The mere fact that he was arrested and accused of a crime is not any evidence against him. Furthermore the defendant is presumed innocent throughout the trial and unless until you conclude, based on careful and impartial consideration of the evidence, that the Commonwealth has proven him guilty beyond a reasonable doubt.

(2) It is not the defendant's burden to prove that he is not guilty. Instead it is the Commonwealth that always has the burden of proving each and every element of the the crime charged and that the defendant is guilty of the crime beyond a reasonable doubt. The person accused of a crime is not required to present evidence or prove anything in his own defense ... If the Commonwealth fails to meet its burden, then your verdict must be not guilty. On the other hand, if the Commonwealth's evidence does prove beyond a reasonable doubt that the defendant is guilty, then your verdict should be guilty.

(3) Although the Commonwealth has the burden of proving that the defendant is guilty, this does not mean that the Commonwealth must prove its case beyond all doubt and to a mathematical certainty, nor

wealth's burden of proof. Accordingly, we find appellant's claim of error devoid of merit.

Finally, appellant, who was sentenced to a three to seven year term of imprisonment for homicide by vehicle while driving under the influence and a consecutive one to two year period of incarceration for driving while under the influence, raises several challenges to the propriety of his sentence.[7] We initially consider his assertion that 75 Pa.C.S. § 3735(a), which provides for the imposition of a three-year mandatory minimum sentence in cases of homicide by vehicle while driving under the influence, is unconstitutional since it removed the sentencing court's ability to exercise discretion when fashioning the appropriate punishment. As we previously have upheld the constitutionality of the contested provision, we need not consider the matter further. *See Commonwealth v. Kostra*, 349 Pa.Super. 89, 502 A.2d 1287 (1985).[8]

▇▇▇ Appellant also asserts that his sentence for driving while under the influence was excessive both by itself and

must it demonstrate the complete impossibility of innocence. A reasonable doubt is a doubt that would cause a reasonably careful and sensible person to hesitate before acting upon a matter of importance in his own affairs. A reasonable doubt must fairly arise out of the evidence that was presented or out of the lack of evidence presented with respect to some element of the crime. A reasonable doubt must be a real doubt; it may not be an imagined one, nor may it be manufactured to avoid carrying out an unpleasant duty.

(4) So, to summarize, you may not find the defendant guilty based on a mere suspicion of guilt. The Commonwealth has the burden of proving the defendant guilty beyond a reasonable doubt. If it meets that burden, the the defendant is no longer presumed innocent and you should find him guilty. On the other hand, if the Commonwealth does not meet its burden, then you must find him not guilty.

7. We note that appellant's sentence also included various other forms of punishment which we do not discuss instantly.

8. Appellant also contends that the sentencing provision is unconstitutional because he was not permitted to discuss its applicability during closing argument. This contention is absurd. We are aware of no constitutional principle which grants a criminal defendant the right to argue to the jury matters regarding potential punishment. Indeed, it long has been clear that the question of a defendant's potential punishment may not be considered by the jury during deliberations. *See Commonwealth v. Waters, supra.* Accordingly, appellant's claim of error entitles him to no relief.

when considered with the consecutive sentence imposed in connection with his conviction for homicide by vehicle while driving under the influence. However, we need not consider this assertion further since the Commonwealth correctly concedes that this sentence is illegal due to the doctrine of merger. *See Commonwealth v. Voshall,* 387 Pa.Super. 47, 563 A.2d 936 (1989), *aff'd,* 529 Pa. 571, 605 A.2d 1222 (1992) (crime of driving while under the influence merges for purposes of sentencing with homicide by vehicle while driving under the influence). In light of this concession, we vacate the judgment of sentence for the offense of driving while under the influence. *Id.; see also Commonwealth v. Carbaugh,* 423 Pa.Super. 178, 620 A.2d 1169 (1993).

Judgment of sentence relating to conviction for driving while under the influence vacated. In all other respects, judgment of sentence affirmed. Jurisdiction relinquished.