J-A21012-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MEGAN BENNIS | : | |
| | : | |
| Appellant | : | No. 662 EDA 2020 |

Appeal from the Judgment of Sentence Entered January 14, 2020
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0001932-2019

BEFORE: LAZARUS, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY LAZARUS, J.: **FILED DECEMBER 04, 2020**

Megan Bennis appeals from the judgment of sentence, entered in the Court of Common Pleas of Bucks County, following her convictions after a non-jury trial for driving under the influence of alcohol—general impairment (DUI),[1] and the summary offenses of careless driving[2] and disregarding a traffic lane.[3] After careful review, we rely, in part, on the trial court opinion, and affirm.

The trial court set forth the facts of the case as follows:

[O]n November 17, 2018, at 12:21 a.m., Officer Mark Leonhauser, a twenty-two-year veteran of the Middletown Township Police Department[,] with extensive experience conducting [DUI] investigations, was on routine patrol when he was dispatched to

---

[1] 75 Pa.C.S.A. § 3802(a)(1).

[2] 75 Pa.C.S.A. § 3714(a).

[3] 75 Pa.C.S.A. § 3309(3).

U.S. Highway 1 in the area of Hulmeville Avenue on a report of two motorists with flat tires. When he arrived at that location, [Bennis'] vehicle, a green Nissan Xterra, was stopped in the traffic lane that merges onto Route 1 from an access road[.] The vehicle's hazard lights were on. When Officer Leonhauser approached the vehicle, he observed [Bennis] in the driver's seat. A male[,] identified as the driver of the other disabled vehicle[,] was seated in [Bennis'] passenger seat[.] During his initial contact with [Bennis], Officer Leonhauser noticed a strong odor of alcohol emanating from [Bennis'] person. He also noted that [Bennis'] eyes were red and bloodshot. Officer Leonhauser asked [Bennis] to step out of the vehicle so that he could inspect the damage and determine how [it] had occurred. A visual inspection of [Bennis'] vehicle revealed that both tires on the right side [] were "blown out." [Officer Leonhauser] observed "large gashes" on the sidewalls of both tires and noted that the rims were "chewed up." In an attempt to identify any potential hazard to other drivers, Officer Leonhauser asked [Bennis] what happened. [Bennis] told the officer inconsistent [stories] and ultimately was unable to explain how the damage occurred.

While speaking to [Bennis] outside her vehicle, the officer noticed that [Bennis] was "a little unsteady on her feet" and that her "balance was a little off." Officer Leonhauser asked [Bennis] where she was coming from and [Bennis] advised that she had been working as a bartender for a wedding at The Winery in Newtown, Bucks County, and was on her way home. [Officer Leonhauser asked Bennis] three or four times if she had consumed any alcohol. [Bennis] initially denied that she had anything to drink, before she finally admitted that she had "a shot." Upon further questioning, [Bennis] admitted to consuming two or three shots of vodka.

[Officer Leonhauser asked Bennis] to submit to field sobriety testing. [Bennis] refused to provide a breath sample for a portable breath test (PBT) [but] did [] perform various physical dexterity and mental acuity tests. Officer Leonhauser testified that of the four tests administered, [Bennis failed] to perform [three] as instructed. [After] the [nine-step heel-to-toe balance] test, [Bennis] was given the opportunity to repeat the test. She refused.

Officer Leonhauser testified that, during his interaction with [Bennis], she was "very argumentative" and "very difficult." When Officer Leonhauser attempted to place [Bennis] in custody,

- 2 -

[she] ignored his multiple requests to place her arms behind her back. Ultimately[, Bennis] was taken into custody and transported to Saint Mary Medical Center where she was read the [Pennsylvania Department of Transportation] DL-26B [blood-draw consent] form. When [Officer Leonhauser asked Bennis] if she would consent to [a] blood [] draw[] for purposes of chemical testing, [Bennis] refused several times to give a verbal response and merely shook her head. [Bennis] also refused to sign the [DL-26B] form. Officer Leonhauser signed the form and [] an assisting nurse sign[ed it] as a witness to [Bennis'] refusal.

Based on the totality of his observations, Officer Leonhauser formed the opinion that [Bennis] was under the influence of alcohol to a degree that rendered her incapable of operating a motor vehicle safely. Officer Leonhauser's account of his interactions with [Bennis] was corroborated by a copy of the [audio and video] recording retrieved from his motor vehicle recording device and [Bennis'] DL-26B form[.] This [c]ourt found Officer Leonhauser to be a credible witness.

Trial Court Opinion, 4/23/20, at 1-3 (internal citations omitted).

The court convicted Bennis of the above offenses on October 10, 2019. On January 14, 2020, the court sentenced Bennis to serve five days to six months on house arrest with immediate parole after expiration of the five days, to pay a $300 fine, and to meet various other conditions. Bennis timely appealed on February 13, 2020; Bennis and the court subsequently complied with Pa.R.A.P. 1925.

On appeal, Bennis raises the following issue for our review: "Whether the evidence was insufficient to convict [Bennis] of [DUI] when [Bennis] called 911 to report she and another driver experienced a flat tire on the same road, the investigating police officer administered non-standardized field sobriety tests, and [Bennis] refused to submit to a blood test?" Appellant's Brief, at 4.

Our Supreme Court has summarized the well-settled standard of review for a challenge to the sufficiency of the evidence as follows:

> When reviewing a challenge to the sufficiency of the evidence, we must determine if the Commonwealth established beyond a reasonable doubt each of the elements of the offense, considering the entire trial record and all of the evidence received, and drawing all reasonable inferences from the evidence in favor of the Commonwealth as the verdict-winner. The Commonwealth may sustain its burden of proof by wholly circumstantial evidence.

*Commonwealth v. Segida*, 985 A.2d 871, 880 (Pa. 2009) (citations omitted).

Bennis was convicted under the following provision of the Motor Vehicle Code:

> **(a) *General impairment.***
>
> > (1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(a)(1).

With regard to the proof necessary to sustain a conviction under section 3802(a)(1), we have previously stated that

> the Commonwealth must show: (1) that the defendant was the operator of a motor vehicle and (2) that while operating the vehicle, the defendant was under the influence of alcohol to such a degree as to render him incapable of safe driving. To establish the second element, the Commonwealth must show that alcohol has
>
> > substantially impaired the normal mental and physical faculties required to safely operate the vehicle. Substantial impairment, in this context, means a diminution or enfeeblement in the ability to exercise judgment, to

deliberate or to react prudently to changing circumstances and conditions. Evidence that the driver was not in control of himself, such as failing to pass a field sobriety test, may establish that the driver was under the influence of alcohol to a degree which rendered him incapable of safe driving, notwithstanding the absence of evidence of erratic or unsafe driving.

**Commonwealth v. Gause**, 164 A.3d 532, 541 (Pa. Super. 2017) (en banc) (citations omitted).

Bennis first argues that "throughout her interaction with Officer Leonhauser, she spoke coherently and clearly, maintained her balance, climbed over a snow-covered median, recited the alphabet, counted backwards, and walked a straight line." Appellant's Brief, at 11. Additionally, Bennis points to the fact that, upon Officer Leonhauser's arrival at the scene, another vehicle, like her own, was disabled from a flat tire. **Id.** at 13. Next, Bennis argues that the trial court improperly focused on what it "perceived as [her] inappropriate emotional response to Officer Leonhauser" in concluding Bennis was intoxicated. **Id.** at 15. Bennis supports this claim by asserting that Officer Leonhauser was impatient with Bennis, that he became frustrated with her "almost immediately upon encountering" her, and stated to her that he was not "trying to speak [] in French." **Id.**; **see** Trial Exhibit C-2. Bennis concludes that her "attitude toward Officer Leonhauser shows an individual

frustrated with a police officer whom she called for help, not someone who was intoxicated."[4]  *Id.* at 16.

We note that, from a practical standpoint, these claims go to the weight of the evidence, rather than the sufficiency of the evidence.  However, Bennis has failed to preserve a weight of the evidence claim  as required by Pa.R.Crim.P. 607(A).  Weight of the evidence claims may not be raised for the first time on appeal.  *See Commonwealth v. Causey*, 833 A.2d 165, 173 (Pa. Super. 2003) ("A claim that a verdict is against the weight of the evidence must be raised in the first instance before the trial court.").  Therefore, we will confine our discussion to the sufficiency of the evidence.

With regard to her sufficiency challenge, Bennis argues that Officer Leonhauser used non-standardized field sobriety tests.[5]  Additionally, because

_____

[4] We have previously stated that evidence of a defendant's demeanor towards the investigating officer is relevant and admissible.  *See Commonwealth v. Teems*, 74 A.3d 142, 145 (Pa. Super. 2013) ("The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include but are not limited to, the following:  the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; **demeanor, including toward the investigating officer**; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech.") (emphasis added).

[5] At trial, Officer Leonhauser described how he administered several tests by requesting that Bennis:  (1) recite the alphabet from E to Z; (2) count backward from 36 to 21; (3) perform a finger-dexterity test where he asked Bennis to touch her fingers to her thumb "in [the] order [of] your index, middle finger, ring finger, pinky finger, while counting out loud forward  . . .  then backward" on each hand; and (4) perform a nine-step heel-to-toe balance test on the roadway fog line.  *See* N.T. Trial, 10/10/19, at 20-23.  Officer Leonhauser testified that Bennis completed the field sobriety tests with mixed

"Officer Leonhauser could not articulate an objective or formal standard to determine an individual's performance other than failing to follow his specific instructions[,]" Bennis claims that Officer Leonhauser's opinion that Bennis was incapable of safely operating a motor vehicle was not supported by "competent evidence." *Id.* at 11. We disagree.

The trial court found the evidence adduced at trial was sufficient to prove DUI by relying on our decisions in ***Commonwealth v. Ragan***, 652 A.2d 925 (Pa. Super. 1995), and ***Commonwealth v. Drake***, 681 A.2d 1357 (Pa. Super. 1996). In those cases, we found that non-standardized field sobriety tests can demonstrate signs of intoxication. ***See Ragan***, ***supra*** at 928 ("[A]ppellant's performance of the field sobriety tests is reflective of the ordinary signs of intoxication discernable by a layperson. Therefore, the evidence of appellant's performance [on the 'one leg stand', 'finger to nose' and 'walking in a straight line' field sobriety tests] were properly admitted at trial."); ***see also Drake***, ***supra*** at 1359 (results from tests requiring appellant to count fingers back and forth with thumb and recite alphabet are admissible because ordinary observer can form opinion as to whether individual is

_____

results: (1) Bennis successfully recited the alphabet from E to Z, ***see id.*** at 20-21; (2) Bennis counted backwards from 36 to 8, and then asked if she was supposed to stop at 12, ***id.*** at 21; (3) Bennis successfully performed one hand of the finger-counting test, but counted backwards on her second hand, ***id.*** at 21-22 ("[I]nstead of counting 1, 2, 3, 4, 4, 3, 2, 1, [Bennis] said 4, 3, 2, 1, 1, 2, 3, 4."); and (4) Bennis walked the nine-step heel-to-toe balance test, but "her feet were turned outward," making the test easier, ***id.*** at 55-57.

intoxicated based upon coordination and concentration as demonstrated by acts and speech).

Bennis attempts to distinguish **Ragan** and **Drake** from her own case by claiming that, in those cases, the arresting officers "articulated reasons why the non-standardized field sobriety tests demonstrated intoxication." Appellant's Brief, at 14. Bennis argues by comparison, stating that Officer Leonhauser's inability to "articulate any objective standard to demonstrate [Bennis'] failure of such non-standardized field sobriety tests" renders the evidence insufficient to sustain her convictions. **Id.**

With regard to opinion evidence of intoxication, we have previously stated:

> Intoxication is a matter of common knowledge, and opinions given by lay people are permissible on the issue. However, the lay witness must have sufficient facts on which to base his opinion before he can express an opinion on another's intoxication. The court also looks to the witness' personal knowledge and observation.

**Commonwealth v. Bowser**, 624 A.2d 125, 133 (Pa. Super. 1993) (internal citations omitted).

Here, Officer Leonhauser testified that he has twenty-two years of experience serving as a police officer. N.T. Trial, 10/10/19, at 5. He testified that he has worked as the primary officer on five-hundred-thirty-seven DUI cases, and as an assisting officer on several hundred more. **Id.** at 6. Officer Leonhauser further testified that he received training in field sobriety testing in 2011, and a refresher course in 2016, and that he is certified in field sobriety

testing. *Id.* at 5-6. Also, Officer Leonhauser explained that he learned several field sobriety testing techniques from his fellow police officers through on-the-job training. *Id.* at 49-50. Specifically, with regard to his on-the-job training, Officer Leonhauser's testimony proceeded as follows:

> [Defense Attorney:] And where did you receive training to administer [the counting backward test]?
>
> \* \* \*
>
> [Officer Leonhauser:] Prior to my field sobriety standardized testing in 2011[,] I had 14 years as a law enforcement officer with hundreds of DUI arrests and investigations.
>
> Learning from other officers, senior officers to myself[,] and my experience as a police officer over the years, I learned different tests, different techniques, to help determine if somebody has the capabilities to physically multitask, to do responsibilities that one person would do if you are operating a motor vehicle, such as driving with my hand on the wheel or using my radio or looking at my hair, things that a normal, rational, commonsense person would do in their car.
>
> **So having them multitask, like you would do in your vehicle[,] are some things** [sic] **that we use to indicate whether somebody is impaired or not.**

*Id.* (emphasis added).

At trial, Officer Leonhauser rendered his lay opinion that Bennis was intoxicated such that she could not operate her motor vehicle safely.[6] *Id.* at

---

[6] At trial, Officer Leonhauser rendered his opinion as to Bennis' intoxication as follows:

> So based on my totality of—my contact with her, speaking with her, the odor of alcoholic beverage, her red, bloodshot eyes, her explanation of the roadway, her statements about not drinking and then drinking, I felt that she was under the influence of

24. During his interaction with Bennis, Officer Leonhauser detected that she had red, bloodshot eyes and she smelled of alcohol. *Id.* at 14. He noted that Bennis told inconsistent stories of how her vehicle sustained such significant damage, and ultimately how she could not explain it. *Id.* at 15-17. Officer Leonhauser further noted that Bennis told different and inconsistent accounts of how much alcohol she consumed that night. *Id.* at 19-20. He testified that Bennis could not describe the roadway leading up to where he encountered her disabled vehicle. *Id.* at 24. Finally, Officer Leonhauser noticed that "throughout the interaction I had with [Bennis], there were times when I would watch her where she was unsteady." *Id.* at 55.

Officer Leonhauser had ample opportunity to observe Bennis. *See Bowser*, *supra*. His opinion was based on the totality of his interaction with her, which included speaking with Bennis initially when she remained inside her vehicle, seeing her unsteady on her feet out of the vehicle, and observing her behavior during her performance of several different field sobriety tests. Indeed, the video and audio recording of their interaction reveals that Officer Leonhauser spent nearly an hour with her from the time he encountered her disabled vehicle through the end of their trip to St. Mary Medical Center. *See* Trial Exhibit C-2. We find this was a sufficient factual basis for Officer Leonhauser's lay opinion regarding Bennis' intoxication. *See Bowser*, *supra*;

---

alcohol, impaired and she could not operate a motor vehicle safely.

N.T. Trial, 10/10/19, at 24.

- 10 -

*see also Drake*, *supra* at 1359 (quoting *Ragan*, *supra*) ("[N]on-expert testimony is admissible to prove intoxication where such testimony is based upon the witness' observation of the defendant's acts and speech and where the witness can opine as to whether the defendant was drunk.") (emphasis omitted); *Commonwealth v. Williams*, 941 A.2d 14, 27 (Pa. Super. 2008) ("[A] police officer may render an opinion as to whether a person is intoxicated.") (citation omitted).

Finally, we agree with the trial court and find the evidence was sufficient to show that alcohol substantially impaired Bennis' normal mental and physical faculties required for her to safely operate a motor vehicle. *See Gause*, *supra*; *see also* Trial Court Opinion, 4/23/20, at 6 (finding evidence sufficient to convict Bennis of section 3802(a)(1) where evidence established Bennis: (1) admitted that she drank two or three "shots" of vodka prior to driving, after initially attempting to conceal that fact from Officer Leonhauser; (2) had red and bloodshot eyes; (3) had compromised balance, evidenced by her unsteadiness on her feet; (4) was unable to explain what caused damage to her vehicle; (5) had mixed results in her ability to follow instructions during field sobriety testing; (6) had an inappropriate and disproportionate emotional response to Officer Leonhauser during his investigation; and (7) was conscious of her guilt, evidenced by her refusal to provide both a breath sample and a

blood sample for testing.[7]). ***See also Teems***, ***supra*** at 147 (evidence of guilt under section 3802(a)(1) sufficient where officer responding to report of disabled vehicle observed defendant sitting in driver's seat, in lane of traffic, depressing brakes, car had lost its tires and was sitting on rims, defendant could not recall if he struck anything or when or where accident might have occurred, officer noticed strong odor of alcohol from defendant, defendant had red, glassy eyes and slurred speech, defendant failed to blow properly into PBT machine, and blood test at hospital revealed that defendant had BAC of 0.143). Relying on the trial court's opinion, both elements of Bennis' section 3802(a)(1) conviction have been proven beyond a reasonable doubt; therefore, her challenge to the sufficiency of the evidence fails. ***See Segida***, ***supra***; ***see also*** Trial Court Opinion, 4/23/20, at 6.

Judgment of sentence affirmed.

---

[7] ***See*** 75 Pa.C.S.A. § 1547(e) (Refusal admissible in evidence.) ("In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3802 or any other violation of this title arising out of the same action, the fact that the defendant refused to submit to chemical testing as required by subsection (a) may be introduced in evidence along with other testimony concerning the circumstances of the refusal. No presumptions shall arise from this evidence but it may be considered along with other factors concerning the charge.").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/4/20