COMMONWEALTH of Pennsylvania

v.

James CASSIDY, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 11, 1995.

Filed Nov. 16, 1995.

Reargument Denied Jan. 26, 1996.

194

D. Stephen Ferito, McMurray, for appellant.

Kemal A. Mericli, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before ROWLEY, President Judge, and TAMILIA and HESTER, JJ.

HESTER, Judge:

This is a direct appeal from the judgment of sentence of twenty-seven to fifty-four months imprisonment imposed following appellant's conviction of aggravated assault. Appellant argues that the evidence presented at his nonjury trial was insufficient to sustain his conviction. We disagree and affirm.

Our standard for reviewing such a challenge is well-established.

The test for determining the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner and drawing all proper inferences favorable to the Commonwealth, the [fact-finder] could reasonably have determined all elements of the crime to have been established beyond a reasonable doubt. *Commonwealth v. Syre,* 507 Pa. 299, 489 A.2d 1340 (1985). This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the

combination of the evidence links the accused to the crime beyond a reasonable doubt. *Commonwealth v. Sullivan,* 472 Pa. 129, 150, 371 A.2d 468, 478 (1977); *Commonwealth v. Farquharson,* 467 Pa. 50, 354 A.2d 545 (1976); *Commonwealth v. Cox,* 466 Pa. 582, 353 A.2d 844 (1976).

*Commonwealth v. Hardcastle,* 519 Pa. 236, 246, 546 A.2d 1101, 1105 (1988); *see also Commonwealth v. Bowser,* 425 Pa.Super. 24, 624 A.2d 125 (1993); *Commonwealth v. Blystone,* 421 Pa.Super. 167, 617 A.2d 778 (1992); *Commonwealth v. Scott,* 376 Pa.Super. 416, 546 A.2d 96 (1988). In applying this test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. *See Commonwealth v. Blystone, supra.* In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. *See Commonwealth v. Nicotra,* 425 Pa.Super. 600, 625 A.2d 1259 (1993). Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. *Id.* The facts, viewed in the light most favorable to the Commonwealth as verdict winner, are as follows.

At approximately 6:00 a.m. on December 7, 1993, appellant, James Cassidy, and his wife, Cynthia Cassidy, the victim in this case, were arguing in their bedroom in their Plum Borough home. Appellant had been awake most of the night because his back hurt. The victim testified that appellant wanted to smoke marijuana as a sleep aid, and the victim opposed it in their home. She testified that their four children arose to dress for school about that time; in fact, her daughter, Anastasia, already was awake. Notes of Testimony ("N.T."), 12/14/94, at 8, 16. The victim told appellant, "If you want to smoke it, go outside." *Id.* at 8. The victim stated that if appellant refused to smoke it outside, "then I wanted the stuff and I was flushing it down the toilet." *Id.*

Appellant refused to give his wife the marijuana and insisted upon smoking it. The victim testified that she then told her husband that if he did not give her the marijuana, she would break his glasses. The victim then shielded appellant's

glasses in her hand and struck them on a desk adjacent to the bed to make it appear as if she had broken them. Enraged, appellant picked up his wife and threw her with such force that she struck the door frame to the bathroom, ricocheted across the hall and struck the door frame to Anastasia's bedroom, and finally landed on the floor. The victim testified that she was "crying for help" and "was in and out of consciousness." *Id.* at 9–10.

Anastasia, who is the victim's natural daughter and appellant's step-daughter, testified similarly to her mother. While she did not see appellant throw her mother, she heard her mother tell appellant to smoke the marijuana outside or she would flush it down the toilet. *Id.* at 25. When appellant refused, Anastasia heard the victim say that she would break appellant's glasses if he did not give her the marijuana. *Id.* at 24. Anastasia heard "a slam down, and I heard my mom screaming. . . . So she was laying on the ground. Her head was in my room sort of. So I got up. She kept yelling to call an ambulance, so I did." *Id.* at 25.

Plum Borough Police Officer James Makin was the first officer on the scene. He found the victim "laying on the hallway floor." *Id.* at 30. The officer testified, "At that point she was in such a position that—she was laying on her side and kind of curled up, protecting her wrist. Her face was sort of under her. I didn't move her, but allowed the paramedics in." *Id.* The victim was transported to the hospital.

The victim was hospitalized for two days. She was placed in a brace that went from the top of her chest down to her thighs and a removable wrist cast, both of which she had to wear for two months. *Id.* at 11.

Appellant presents the following issue for our review:

Did the trial court error (sic) in it's (sic) finding that the Commonwealth proved, beyond a reasonable doubt, that appellant did intentionally, knowingly or recklessly attempt to or caused serious bodily injury manifesting an extreme indifference to human life.

Appellant's argument, in a nutshell, is that the victim did not suffer serious bodily injury as defined in the Crimes Code.

Rather, he asserts that she suffered mere bodily injury and therefore he is guilty only of simple assault.

The offense of aggravated assault is defined in 18 Pa.C.S. § 2702:

§ 2702. **Aggravated assault**

(a) **Offense defined.**—A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

Appellant first contends that this case is controlled by *Commonwealth v. Alexander,* 477 Pa. 190, 383 A.2d 887 (1978). However, we find that *Alexander* is inapposite to the instant case. The Commonwealth in *Alexander* did not contend that the defendant in fact inflicted serious bodily injury upon the victim. Rather, it argued that the defendant's action in striking the victim with his fist was sufficient to show that he intended to inflict serious bodily injury, thereby subjecting the defendant to liability under the attempt provision of the aggravated assault statute. In that scenario, our Supreme Court held that where *no serious bodily injury was sustained,* the fact that the defendant threw a single punch and walked away was insufficient to support a finding that he intended to inflict serious bodily injury. Moreover, the *Alexander* court explicitly limited its holding to the particular facts in that case and noted, "We hasten to add that a simple assault combined with other surrounding circumstances may, in a proper case, be sufficient to support a finding that an assailant attempted to inflict serious bodily injury, thereby constituting aggravated assault." *Id.,* 477 Pa. at 194, 383 A.2d at 889–90.

In the instant case, the Commonwealth did not concede that the victim's injuries were mere bodily injury rather than serious bodily injury. Bodily injury and serious bodily injury are defined in 18 Pa.C.S. § 2301, which provides in pertinent part:

"Bodily injury." Impairment of physical condition or substantial pain.

"Serious bodily injury." Bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

The trial court concluded that "the trauma to the victim's wrist and back which resulted in both being placed in casts for two months, was a 'protracted loss or impairment of the function' of those parts of the victim's body and thus constituted 'serious bodily injury'; ...." Trial court opinion, 3/23/95, at 3. In assailing this conclusion by the trial court, appellant asserts that the trial court failed to consider that there was a brace, not a cast, on the victim's back and a "velcro type half a cast" on her wrist. Appellant's brief at 15. Thus, appellant contends, "Both the brace and the cast were removable at Mrs. Cassidy's choosing, so that her situation was not such a protracted loss of impairment as would be the case if she had to wear full casts that were not removable at her choosing." *Id.*

We are not persuaded of the significance of this fact. First, the trial court was well aware that the back brace and wrist casts were removable. Trial court opinion, 3/23/95, at 2. Second, there was no testimony from the victim that the casts, indeed, were removed. Rather, her testimony supports the inference that they were worn continuously for two months:

Q. After you remained at the hospital for two days, did you have anything done to you? Did they ...

A. What they did was they took x-rays of my back and they took x-rays of my right wrist.

Q. Was anything done?

A. They put a brace on me for my back for two months and also a wrist cast for my wrist, *because I couldn't move it for two months.*

N.T., 12/14/94, at 11–12 (emphasis added).

Appellant also makes much of the fact that after he threw the victim into the doorjamb, he did not escalate the attack;

rather, he immediately apologized. Appellant claims that this fact is noteworthy in examining the surrounding circumstances of the attack in order to glean his intent to inflict serious bodily injury. Again, while the victim did state that appellant apologized after attacking her, we note she also stated that she faded in and out of consciousness. N.T., 12/14/94, at 10. Moreover, appellant claimed that he did not intend to "shove her at all actually. All [he] wanted to do is get [his] glasses." *Id.* at 42–43. Yet, the victim was propelled with a force great enough to bounce her from one doorjamb into another across the hall. Finally, his self-serving claim that he did not intend to hurt his wife is belied by his stepdaughter's testimony that he "kept saying, 'No, don't call [the ambulance].'" *Id.* at 26.

We conclude, as did the trial court, that the evidence supports the finding that the victim sustained serious bodily injury. The wearing of a brace which fits from the top of the chest to the thighs, covering the front and back, and a cast which immobilizes movement of the wrist, both for two months, *id.* at 11, certainly constitutes impairment of the function of any bodily member.

Moreover, aside from the presence of serious bodily injury itself, there was other evidence herein to establish that appellant *intended* to cause serious bodily injury. An intent to cause serious bodily injury may be inferred from circumstantial evidence. *Commonwealth v. Rightley,* 421 Pa.Super. 270, 617 A.2d 1289 (1992).

In the instant case, appellant, who concedes that he is larger and stronger than his wife, *see* appellant's brief at 14, picked her up and threw her across the room with such force that she bounced from one doorjamb to another, finally coming to rest on the ground. She faded in and out of consciousness, N.T., 12/14/94, at 10, and was hospitalized for two days. *Id.* Moreover, the events preceding the assault and the fact that appellant attacked his wife upon observing her hit his glasses on the desk, supports a logical inference that appellant attacked his wife in a fit of rage, and thereby intended to inflict

serious bodily injury. We have no difficulty concluding, as did the trial court, that appellant acted intentionally.

In his alternate argument, appellant contends that the Commonwealth did not prove beyond a reasonable doubt that he acted with the mens rea of recklessness necessary to establish aggravated assault, citing *Commonwealth v. O'Hanlon*, 539 Pa. 478, 653 A.2d 616 (1995). In *O'Hanlon*, a drunk driver ran a red light and struck another vehicle, seriously injuring the other driver. He was convicted of aggravated assault and reckless endangerment. After affirmance by this court, O'Hanlon's petition for allowance of appeal was granted by the Pennsylvania Supreme Court, which considered the mens rea of recklessness necessary to establish aggravated assault.

As we already have concluded, appellant, in the instant case, caused serious bodily injury intentionally; thus, the issue of recklessness need not be addressed. However, even if we were required to address this issue, there is nothing in *O'Hanlon* which necessitates reversal herein. The *O'Hanlon* court stated, "[F]or the degree of recklessness contained in the aggravated assault statute to occur, the offensive act must be performed under circumstances which almost assure that injury or death will ensue." *Id.*, 539 Pa. at 482, 653 A.2d at 618. We unequivocally state that appellant's act of picking up his wife and throwing her with such force that she bounced off the doorjamb, struck another door frame, and finally fell to the ground constitutes "circumstances which almost assure that injury ... will ensue." *Id.* Appellant's protestation to the contrary that he did not throw his wife but "merely" pushed her are disregarded since we view the evidence in the light most favorable to the verdict winner, the Commonwealth, on appeal. *Commonwealth v. Hardcastle, supra.*

Finally, appellant contends that if we find that the victim sustained serious bodily injury, the evidence is insufficient to support his conviction for aggravated assault because it does not show that he manifested an extreme indifference to the value of human life. In support, he cites *Commonwealth v.*

*Magnelli,* 348 Pa.Super. 345, 502 A.2d 241 (1985). In *Magnelli,* both the defendant and the Commonwealth agreed that serious bodily injury had been inflicted by the defendant's actions. Magnelli approached one of two police officers who crouched over his brother, who was prone on the ground, and pushed or threw the officer into adjacent concrete steps. However, this court determined that the evidence was insufficient to prove that the defendant acted recklessly under circumstances manifesting an extreme indifference to the value of human life.

As we stated *supra* in reference to the applicability of *O'Hanlon,* since we have determined that appellant herein acted intentionally, we need not address whether he acted recklessly; therefore, *Magnelli* is inapposite. Moreover, even if we assumed *Magnelli's* relevance to the present case, it provides appellant with no relief. The trial court in *Magnelli* arrested judgment on the aggravated assault conviction because it found "that the connection between the officer's injuries and [the defendant's] 'acts is so attenuated that this court feels that the result was in no way within the intent or contemplation of [the defendant].' " *Id.,* 348 Pa.Super. at 347, 502 A.2d at 242. This court agreed with the trial court's determination therein.

We could not, and will not, make the same statement in the instant case. The trial court herein determined that while appellant "pushed his wife only one time; . . . he lifted her before doing so, and that push was violent enough to propel her across the hall a second time and into another doorjamb after which she fell to the floor." Trial court opinion, 3/23/95, at 2. We cannot say that the connection between the victim's injuries and appellant's actions was attenuated at all.

Judgment of sentence affirmed.