J. S27044/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| RAYMOND DAVID, | : | |
| | : | |
| Appellant | : | No. 1798 EDA 2014 |

Appeal from the Judgment of Sentence January 16, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division No(s).: CP-51-CR-0008429-2012

BEFORE: FORD ELLIOTT, P.J.E., STABILE, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                **FILED JUNE 30, 2015**

Appellant, Raymond David, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, after a jury found him guilty of third-degree murder[1] and criminal conspiracy to commit murder.[2]  He challenges the sufficiency of the evidence for accomplice liability for third-degree murder.  We affirm.

The trial court summarized the trial evidence in a light most favorable to the Commonwealth:

> During the last week of February 2012, one of [Appellant's] close friends, Nyere Jordan (Nyere) was

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 2502(c).

[2] 18 Pa.C.S. § 903.

murdered. [Appellant] and Nyere were very close, "like bothers," prior to his death. Nafees Jordan (Nafees), Nyere's brother, and Warren Johnson (Johnson), Nyere's cousin, asked [Appellant] if he knew who was responsible for Nyere's death. Both Nafees and Johnson told [Appellant] that they believed Mark Reddy (Reddy) killed Nyere, and that they were going to "shoot his ass up and kill him." About a week or two later, Johnson called [Appellant] on his cell phone and asked him to call Reddy to set up a meeting at a local barber shop under the pretext of purchasing marijuana. Johnson instructed [Appellant] to let him know which way Reddy was walking so that Johnson could kill him.

On March 17, 2012, around 7 p.m., Reddy entered the Rite Aid at 19th Street and Fairmount Avenue. He was there for about 20 to 30 minutes, then received a phone call and left. [Appellant] had telephoned Reddy and asked if he had marijuana for sale.[fn 6] Reddy confirmed that he did and he instructed [Appellant] to meet him at the barber shop at 17th and Poplar Streets. [Appellant] purchased marijuana from Reddy at the barber shop, and Reddy left. Outside of the barber shop, [Appellant] observed a burgundy colored Grand Prix driven by a light-skinned African-American male, with Johnson in the front passenger seat. After [Appellant] purchased the marijuana, Johnson called [Appellant] to ask where Reddy was, and [Appellant] told Johnson that Reddy was walking on Wylie Street. A few minutes later, Johnson called [Appellant] again, and told [Appellant] that he was parked on Perkiomen Street near Wylie Street waiting for Reddy to pass. [Appellant] began walking across Wylie Street when [Appellant] heard the gunshots.[fn 7] Appellant] received a final call from Johnson, who asked if he heard the gunshots. [Appellant] replied that he heard the gunshots and was going to "go up to the street to see what was going on and what people were saying." Reddy was found dead next to a garage located at 1812 Wylie Street and 7:50 p.m.[fn 8]

---

[fn 6] The cell phone records of [Appellant], Reddy, and Johnson were introduced into evidence. These records showed that on the night of the murder, each time

[Appellant] contacted Reddy, he then contacted a phone number later determined to be Johnson's.

[fn 7] Video surveillance of the 800 block of Leland Street for March 17, 2012 was introduced into evidence, and showed a man running down Leland Street, stopping to use an inhaler. [Appellant] admitted in his statement to running down Leland Street after hearing gunshots and stopping to take his "asthma pump medicine."

[fn 8] Video surveillance from a camera located on the west side of the property where the homicide took place was introduced into evidence. The video shows a single male approach Reddy, who was walking west on Wylie Street, and shoot him from behind. The video then shows the shooter traveling back east on Wylie Street, and making a right turn onto Perkiomen Street. The quality of the video was not good enough to identify the shooter. Reddy suffered seven gunshot wounds: he was struck in the back of the head, the side of the right chest, the lower right back, the right upper arm, the left forearm, the left thigh, and the left lower leg.

---

After homicide detectives analyzed phone numbers from Reddy's cell phone, and identified [Appellant's] as one of them, he was brought to the Homicide Unit of the police department at approximately 11 p.m. on March 17, 2012. On March 18, 2012 at 11:20 p.m., [Appellant] made a statement to Detectives Leahy and Graf in the homicide unit. In the statement, [Appellant] indicated: that he purchased marijuana from Reddy at the barber shop located at 17th and Poplar Streets; he then watched Reddy walk off toward Wylie Street. A few moments later, when walking down Leland Street, [Appellant] heard gunshots, and observed Stephen Cannida (Cannida) running past Francis Street near Perkiomen Street, wearing a black hood and dark colored pants. The video surveillance obtained by the detectives for the 800 block of Leland Street corroborates the fact that the Appellant was in that location at 7:51 p.m. on March 17, 2012.

Based on telephone records obtained through a search warrant and based on the fact that further investigation

established that Cannida was confined to a halfway house on the date of the murder, detectives brought [Appellant] into the Homicide Unit as a suspect on June 28, 2012. [Appellant waived his **Miranda**[3] rights and] made a statement on this date, refuting much of the information he had given in his prior statement. On June 28, [Appellant] admitted to detectives that he called Reddy under the pretext of a drug transaction, knowing that Johnson would be nearby seeking revenge.[4] Appellant] stated that he willfully participated in the plan to kill Reddy, and he knew that his actions would likely result in Reddy's death. Telephone records from [Appellant's], Reddy's, and Johnson's cell phones corroborated the chain of events in the Appellant's June 28 statement. The video surveillance placed [Appellant] in close proximity to the crime scene just one minute after the killing.

Trial Ct. Op., 9/11/14, at 2-4 (record citations omitted). Appellant testified at trial and denied making his second statement to police. N.T., 12/3/14, at 52.

On December 6, 2013, a jury found Appellant guilty of third-degree murder and criminal conspiracy. On January 16, 2014, the trial court sentenced him to an aggregate term of twenty to forty years' incarceration. On January 23, 2014, Appellant filed post-sentence motions, which he amended on the following day. On May 23, 2014, the trial court denied Appellant's post-sentence motions. Appellant timely filed the instant appeal and a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

---

[3] **Miranda v. Arizona**, 384 U.S. 436 (1966).

Appellant presents the following questions for review:

[Whether] the evidence was insufficient to support a guilty verdict for third-degree murder where [Appellant] was found guilty as an accomplice but there was no evidence that his alleged accomplice(s) actually killed the victim?

[Whether] the trial court abuse[d] its discretion in refusing to permit trial counsel to elicit relevant, probative evidence of whether [Appellant's] alleged accomplices had been arrested for being the actual killer?

Appellant's Brief at 7.

Appellant first argues the evidence was insufficient to support a conviction for third-degree murder, because the Commonwealth did not establish the identity of the shooter. Appellant's Brief at 8. He contends the trial evidence gave rise to an equally probable inference that a person unrelated to his and Johnson's plan shot Reddy. *Id.* He thus suggests he could not be held culpable as an accomplice in the murder because there was no evidence he assisted Reddy's actual killer. *Id.* at 11. No relief is due.

When reviewing a challenge to the sufficiency of the evidence, our scope of review is plenary and the standard of review is *de novo*. ***Commonwealth v. Ratsamy***, 934 A.2d 1233, 1235 (Pa. 2007).

The test for determining the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner and drawing all proper inferences favorable to the Commonwealth, the fact-finder could reasonably have determined all elements of the crime to have been established beyond a reasonable doubt. This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as

the combination of the evidence links the accused to the crime beyond a reasonable doubt.

In applying this test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

*Commonwealth v. Cassidy*, 668 A.2d 1143, 1144 (Pa. Super. 1995) (citations and some punctuation omitted).

Third-degree murder is a killing done with legal malice, but without the specific intent to kill which is required for first degree murder. *Commonwealth v. Geiger*, 944 A.2d 85, 90 (Pa. Super. 2008). "[M]alice may be found where the defendant has consciously disregarded an unjustified and extremely high risk that [his] conduct might cause death or serious injury to another." *Id.*

With respect to accomplice liability:

A person is deemed an accomplice of a principal if "with the intent of promoting or facilitating the commission of the offense, he: (i) solicit[ed the principal] to commit it; or (ii) aid[ed] or agree[d] or attempt[ed] to aid such other person in planning or committing it." 18 Pa.C.S. § 306; *Commonwealth v. Spotz*, . . . 716 A.2d 580, 585 ([Pa.] 1998). Accordingly, two prongs must be satisfied for a defendant to be found guilty as an "accomplice." First, there must be evidence that the defendant intended to aid or promote the underlying offense. Second, there must be evidence that the defendant actively participated in the crime by soliciting, aiding, or agreeing to aid the principal. While these two requirements may be established by

> circumstantial evidence, a defendant cannot be an accomplice simply based on evidence that he knew about the crime or was present at the crime scene. There must be some additional evidence that the defendant intended to aid in the commission of the underlying crime, and then did or attempted to do so. With regard to the amount of aid, it need not be substantial so long as it was offered to the principal to assist him in committing or attempting to commit the crime.

*Commonwealth v. Murphy*, 844 A.2d 1228, 1234 (Pa. 2004) (some citations omitted). An accomplice may be found guilty even where "the person claimed to have committed the offense has not been prosecuted or convicted or has been convicted of a different offense or degree of offense or has an immunity to prosecution or conviction or has been acquitted." 18 Pa.C.S. § 306(g); *cf. Commonwealth v. Woodward*, 614 A.2d 239, 242 (Pa. Super. 1992) (explaining accomplice liability only requires proof of requisite intent and aid, agreement to aid, or attempt to aid in commission of offense).

Following our review of the arguments and the record, we conclude there was sufficient evidence to sustain Appellant's conviction for third-degree murder as an accomplice. Initially, as the trial court explained, there was ample evidence of Appellant's intent to aid Johnson and kill Reddy:

> The Commonwealth presented evidence [proving that] the defendant intended to facilitate the underlying offense. The defendant was aware that Nafees and Johnson wanted Reddy dead because they believed he killed Nyere. Johnson discussed this plan with [Appellant], and then telephoned [Appellant] a few weeks later to form a plan. Johnson instructed [Appellant] to ask to purchase the marijuana from Reddy at the barber shop at 17th and

> Poplar Streets, and to then inform Johnson of Reddy's location. [Appellant] complied with this plan and was aware that by taking these actions Reddy's death would likely result.

Trial Ct. Op. at 6.

Further, based on evidence submitted by the Commonwealth, a reasonable juror could conclude Appellant actively aided the principal who shot and killed Reddy. The Commonwealth submitted phone records of calls between Appellant, Reddy, and Johnson on the date of the murder and Appellant's statements to police describing the contents of his communications. N.T., 12/3/13, at 234, 237. Appellant and Reddy met at the barber shop at 17th and Poplar Streets where Appellant purchased marijuana from Reddy; Appellant then informed Johnson that Reddy was walking on Wylie Street. *Id.* at 212-13; N.T., 12/4/14, at 46. In another phone conversation, Johnson informed Appellant he was parked near Wylie and Perkiomen Streets waiting for Reddy to pass. N.T., 12/4/13, at 46. Surveillance cameras showed that as Reddy passed that same intersection heading west, the principal approached Reddy from behind, shot him several times, traveled back east on Wylie Street, and turned right onto Perkiomen Street. N.T., 12/3/13, at 245. Meanwhile, video surveillance also showed Appellant running down Leland Street, a few blocks from the shooting, after hearing the gunshots. *Id.* at 229. Appellant received another call from Johnson, asking if he heard the gunshots. N.T., 12/4/13, at 46. Appellant

replied he did and he would "go up the street to see what was going on and what people were saying." ***Id.***

Appellant further admitted his involvement in Reddy's death to Detectives Leahy and Graf, explaining he called Reddy under the pretext of a drug transaction, knowing that Johnson would be nearby seeking revenge. ***Id.*** at 18-19. He also stated he willfully participated in the plan to kill Reddy and knew his actions would likely result in Reddy's death. ***Id.*** at 23-24. The jury was free to weigh his prior statements to police against his testimony at trial. ***See Cassidy*** 668 A.2d at 1144.

Thus, although Appellant contends that someone other than Johnson could have shot Reddy, there was a sufficient basis for the jury to find Appellant planned and assisted in a plot to shoot Reddy and an individual associated with that plot shot and killed Reddy. Accordingly, we discern no merit to Appellant's claim that he is entitled to relief based on the failure to introduce direct evidence of the killer's identity. ***See id.***

Appellant next argues the trial court abused its discretion in precluding him from asking the detectives whether his alleged coconspirators and accomplices were arrested for shooting the victim. Appellant's Brief at 12. Appellant asserts the trial court erred in ruling that the identity of the principal was not an element of the offense, and therefore, improperly excluded evidence disproving a material fact. ***Id.*** at 12-13. We disagree.

The scope of cross-examination is largely within the discretion of the trial court. *Commonwealth v. Dreibelbis*, 426 A.2d 1111, 1117 (Pa. 1981). With respect to the admission or exclusion of evidence:

> Our standard for review regarding the admissibility of evidence is an abuse of discretion. "[T]he admissibility of evidence is a matter addressed to the sound discretion of the trial court and . . . an appellate court may only reverse upon a showing that the trial court abused its discretion." *Commonwealth v. Weiss*, 776 A.2d 958, 967 (Pa. 2001) (citations omitted). "An abuse of discretion is not a mere error in judgment but, rather, involved bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law." *Commonwealth v. Hoover*, 16 A.3d 1148, 1150 (Pa. Super. 2011).

*Commonwealth v. Collins*, 70 A.3d 1245, 1251-52 (Pa. Super.), *appeal denied*, 80 A.3d 774 (Pa. 2013).

Having reviewed the arguments and record, we agree with the trial court that proof that the principal committed the underlying offense was not an element in establishing Appellant's guilt for third-degree murder under a theory of accomplice liability or conspiracy. *See* Trial Ct. Op., at 9; *Woodward*, 614 A.2d at 242. We further agree Appellant's proffer that the police did not arrest Johnson or Nafees was immaterial to a fair consideration of his innocence or guilt of the charges. Accordingly, we discern no basis to conclude the trial court abused its discretion in precluding this evidence and affirm on the basis of the trial court's opinion. *See* Trial Ct. Op., at 9-10.

Judgment of sentence affirmed.

J. S27044/15

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/30/2015