J-S42021-17

2017 PA Super 347

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| SCOTTY JOE SALES | |
| Appellant | No. 2057 MDA 2016 |

Appeal from the Judgment of Sentence November 18, 2016
In the Court of Common Pleas of Fulton County
Criminal Division at No(s): CP-29-SA-0000009-2016

BEFORE:  OLSON, J., MOULTON, J., and FORD ELLIOTT, P.J.E.

OPINION BY MOULTON, J.:                    **FILED NOVEMBER 06, 2017**

Scotty Joe Sales appeals from the November 18, 2016 judgment of sentence entered in the Court of Common Pleas of the 39th Judicial District (Fulton County Branch) following his conviction for driving while commercial operating privilege is suspended, 75 Pa.C.S. § 1606(c)(1)(ii).  For the reasons that follow, we reverse.

On May 16, 2016, Pennsylvania State Police Trooper Steven R. Morningstar stopped Sales' tractor trailer on Interstate 70 in Brush Creek Township, Pennsylvania for a speeding violation.  At the time, Sales was a Kentucky resident and had a Kentucky commercial driver's license ("CDL").  Upon accessing Sales' Kentucky driving record, Trooper Morningstar learned that Sales' CDL had been suspended as of March 27, 2016.  Trooper

Morningstar cited Sales for speeding[1] and for driving while commercial operating privilege is suspended.

On May 26, 2016, a magisterial district judge convicted Sales of speeding and driving while commercial operating privilege is suspended. Sales filed a summary appeal with the trial court, which held a *de novo* hearing on November 18, 2016. The trial court summarized the evidence presented at the hearing as follows:

> Trooper Morningstar testified that [on May 16, 2016] he confronted [Sales] about the status of his license; according to Trooper Morningstar, [Sales'] response was "kind of a head cock, a shoulder shrug." It appeared to Trooper Morningstar that [Sales] was "indifferent" to the fact that his license was suspended.
>
> Under cross-examination, Trooper Morningstar clarified that [Sales] did not state that he was unaware of the license suspension.[2] When asked why his license was suspended, [Sales] responded with "I don't know" or "unknown."
>
> [Sales] took the stand in his own defense. [Sales] denied any knowledge of his license being suspended at the time he was stopped by Trooper Morningstar. He further denied receiving any letter or information from the [Commonwealth] of Kentucky indicating his license was suspended.

___

[1] 75 Pa.C.S. § 3362.

[2] Trooper Morningstar testified, "He didn't tell me point-blank, I was unaware. It was, Okay or a shrug of the shoulders, cock of the head." N.T., 11/18/16, at 13.

Opinion Sur Pa.R.A.P. 1925(a), 3/9/17, at 3-4 (internal citations omitted)

("1925(a) Op."). Further:

> The Commonwealth introduced Commonwealth's Exhibit 1, which consisted of the driving record of [Sales] as reported by the [Commonwealth] of Kentucky. According to this record, [Sales' CDL] was "suspended." The driving record also establishes that Kentucky issued a suspension order on March 27, 2016 for a violation of some type. It further appears that the Kentucky Transportation Cabinet issued a previous order of suspension on June 27, 2015 for "Failure to Answer Court Summons."

*Id.* at 3 (internal citations omitted). At the conclusion of the hearing, the trial court found Sales guilty of driving while commercial operating privilege is suspended and sentenced him to pay fines and costs in the amount of $1,065.[3]

On December 14, 2016, Sales timely appealed to this Court. After Sales filed his Pennsylvania Rule of Appellate Procedure 1925(b) statement, the trial court issued a Rule 1925(a) opinion. In its opinion, the trial court stated that it had erroneously convicted Sales and concluded that the evidence at trial was insufficient to support the conviction:

> In short, there was no evidence presented by the Commonwealth to establish that the Kentucky Transportation Cabinet mailed notice of the suspension to [Sales] by first-class mail, as required by Kentucky law. Further, there was no evidence presented upon which this court could find [Sales] to have actual notice of the suspension, i.e., no admission by [Sales] that he was

---

[3] The trial court also granted Sales' request to withdraw his summary appeal from the speeding conviction.

aware of the suspension or proof of receipt of notice of the suspension.

Accordingly, this court is constrained to opine that it erred in finding the Commonwealth's evidence sufficient to prove beyond a reasonable doubt that [Sales] had notice of the suspension of his [CDL].

1925(a) Op. at 5 (internal citation omitted).

On appeal, Sales presents one question for our review: "Did the Commonwealth prove [sic] sufficient evidence beyond a reasonable doubt that [Sales] had been provided notice that his CDL was suspended so as to convict [Sales] under 75 Pa.C.S. § 1606(c)(1)(ii)?" Sales' Br. at 6.

Our standard of review of a sufficiency of the evidence claim "is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Heberling*, 678 A.2d 794, 795 (Pa.Super. 1996). Further:

[W]e may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

*Commonwealth v. Vetrini*, 734 A.2d 404, 406-07 (Pa.Super. 1999) (quoting *Commonwealth v. Cassidy*, 668 A.2d 1143, 1144 (Pa.Super. 1995)).

The question in this appeal is whether the Commonwealth proved that Sales had notice of the suspension of his Kentucky CDL to support a conviction under section 1606(c)(1)(ii) of the Uniform Commercial Driver's License Act ("UCDLA"). Our Court addressed the notice requirement under this section in **Commonwealth v. Rose**, 820 A.2d 164 (Pa.Super. 2003). In that case, Rose was convicted under section 1606(c)(1)(ii) of the UCDLA for driving with a suspended Florida CDL. On appeal, Rose argued that the evidence was insufficient to prove beyond a reasonable doubt that he had notice that his Florida CDL was suspended. **Id.** at 168-69.

This Court began by noting that "[t]he issue of whether notice of suspension is required for conviction under [section] 1606-driving while commercial license is suspended, is an issue of first impression before this Court." **Id.** at 169.

> We have examined [section] 1543 of the Vehicle Code-driving while operating privilege is suspended or revoked to guide our inquiry with respect to [section] 1606 [of the UCDLA]. Pennsylvania case law is well-settled that in order to sustain a conviction under [section] 1543, the Commonwealth must prove that the defendant had actual notice that his license had been suspended or revoked. Additionally, under [section] 1532(b), the Commonwealth's failure to notify a person of their driver's license suspension within a reasonable time may result in vacation of the suspension if the person is prejudiced as a result. Since actual notice is required to sustain a conviction for [section] 1543-driving while operating privileges suspended or revoked, **we conclude that in order to convict for [section] 1606, the commercial license equivalent to [section] 1543, the Commonwealth must demonstrate that a person received actual notice that his [CDL] was suspended.**

- 5 -

*Id.* at 169-70 (internal citations omitted; emphasis added); *see Commonwealth v. Crockford*, 660 A.2d 1326, 1329 (Pa. Super. 1995) (*en banc*) (recognizing that actual notice is "a judicially created element, designed to protect a defendant's due process rights").

In determining whether Rose had actual notice of his Florida CDL suspension, we held that Florida law regarding proof of notice applied. *Rose*, 820 A.2d at 170. Thus, we examined the notice provision of Florida's CDL suspension statute and the cases interpreting it. *Id.* at 170-71. We determined that, under Florida law, because Rose's suspension resulted from his failure to pay a registration fee, the Commonwealth was required to prove that Rose had, in fact, received notice of the suspension to establish a violation under section 1606(c)(1)(ii) of the UCDLA. *Id.* at 171. We concluded that although "the Commonwealth presented evidence that the notice of suspension was mailed to [Rose], it failed to present evidence that [Rose] received said notice." *Id.* Therefore, we reversed Rose's conviction. *Id.*

Following *Rose*, the Commonwealth must prove that the defendant had "actual notice" of the license suspension to support a conviction under section 1606(c)(1)(ii) of the UCDLA. The Commonwealth may establish "actual notice" either by: (1) presenting evidence that the defendant, in fact, received notice of the suspension, such as the defendant's own admission or other evidence showing his or her receipt of notice; or

(2) satisfying the standard for proving notice in the state of the license suspension. As this Court explained in **Crockford**:

> Notice is a question of fact, and anything that proves knowledge or is legal evidence showing that knowledge exists can be sufficient. As a practical matter, in most cases it is virtually impossible for the Commonwealth to prove positively that the defendant received express actual notice of suspension; only the defendant would have such knowledge. The Commonwealth, relying only upon the facts and circumstances of a case, can, at best, impute such knowledge to the defendant.

660 A.2d at 1330.[4]

Applying these principles to the facts of this case, we conclude that the Commonwealth failed to establish that Sales actually received notice of the Kentucky license suspension. Contrary to the Commonwealth's assertion, Trooper Morningstar's testimony that Sales did not expressly deny receiving notice at the time of the traffic stop was insufficient to prove that Sales, in fact, received notice. Absent any evidence of actual notice, the

---

[4] In discussing the "actual notice" requirement, the **Crockford** Court contrasted actual notice with constructive notice as follows:

> Constructive notice is information or knowledge of a fact imputed by law to a person (although he may not actually have it), because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it. . . . Constructive notice is a presumption of law, **while actual notice requires proof of facts and circumstances showing knowledge actually received**.

660 A.2d at 1330 n.3 (quotation and internal citation omitted) (emphasis added).

Commonwealth was required to satisfy the standard for proving notice under

Kentucky law. Therefore, we must look to Kentucky law to determine if the

Commonwealth satisfied its burden of proof. *See Rose*, 820 A.2d at 170.

The Kentucky statute governing the suspension of a driver's license,

whether commercial or non-commercial, provides:

> The [Kentucky Transportation C]abinet or its agent
> designated in writing for that purpose shall provide any
> person subject to the suspension, revocation, or
> withdrawal of their driving privileges, under provisions of
> this section, an informal hearing. Upon determining that
> the action is warranted, **the [C]abinet shall notify the
> person in writing by mailing the notice to the person
> by first-class mail to the last known address of the
> person.** The hearing shall be automatically waived if not
> requested within twenty (20) days after the [C]abinet
> mails the notice. The hearing shall be scheduled as early
> as practical within twenty (20) days after receipt of the
> request at a time and place designated by the [C]abinet.

Ky. Rev. Stat. ("KRS") § 186.570(4) (emphasis added). Therefore, to

establish that Sales violated section 1606(c)(1)(ii) of the UCDLA, the

Commonwealth was required to establish that the Kentucky Transportation

Cabinet sent notice of the license suspension via first-class mail to Sales' last

known address.[5]

The Commonwealth contends that the trial court erred in applying

*Rose*'s notice requirement because Kentucky law does not require proof of

actual notice of the suspension, citing *Commonwealth v. Duncan*, 939

---

[5] Like the trial court, we have found no Kentucky case law interpreting
KRS § 186.570(4). *See* 1925(a) Op. at 3.

- 8 -

S.W.2d 336 (Ky. 1997). We conclude, however, that the Commonwealth's reliance on **Duncan** is misplaced.

In **Duncan**, the Kentucky Supreme Court held that a certified copy of the Kentucky Transportation Cabinet's driver history is sufficient proof, by itself, of a license suspension to support a conviction under Kentucky's statute prohibiting operation of motor vehicle with a suspended license. **Id.** at 338-39 (citing KRS § 186.620(2)).[6] Thus, the Commonwealth is correct that Kentucky law does not require actual notice of the suspension to support a conviction for driving with a suspended license under KRS § 186.620(2). However, KRS § 186.620(2) does not govern the resolution of this case.

Unlike Kentucky, Pennsylvania law **does** require proof of actual notice to support a conviction under section 1606(c)(1)(ii) of the UCDLA. We look to Kentucky law only to determine the standard for proving notice of the suspension, which is codified in KRS § 186.570(4). Under that provision, the

---

[6] KRS § 186.620(2) provides:

> No person who has not applied for an operator's license or whose operator's license has been denied, canceled, suspended or revoked, or whose privilege to operate a motor vehicle has been withdrawn, shall operate any motor vehicle upon the highways while the license is denied, canceled, suspended, or revoked or his privilege to operate a motor vehicle is withdrawn, or the license has not been applied for.

Kentucky Transportation Cabinet must provide written notice of the suspension to the licensee by first-class mail.

Here, the Commonwealth presented Sales' Kentucky driving record, which merely states the date on which his license was suspended. ***See*** Cmwlth.'s Ex. 1. This document does not indicate that either a notice of informal hearing or a notice of suspension was mailed to Sales as required by KRS § 186.570(4). As the trial court found:

> [T]here was no evidence presented by the Commonwealth to establish that the Kentucky Transportation Cabinet mailed notice of the suspension to [Sales] by first-class mail, as required by Kentucky law. Further, there was no evidence presented upon which this court could find [Sales] to have actual notice of the suspension, i.e., no admission by [Sales] that he was aware of the suspension or proof of receipt of notice of the suspension.

1925(a) Op. at 4-5. Without any evidence of mailing of a notice to Sales, the Commonwealth failed to prove beyond a reasonable doubt that Sales had actual notice of his Kentucky license suspension. Therefore, we agree with the trial court's conclusion in its Rule 1925(a) opinion that the evidence was insufficient to sustain Sales' conviction.

Judgment of sentence reversed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/6/2017

- 10 -