J-S20006-20
J-S20007-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
EVAN DAVIS :
:
Appellant : No. 803 EDA 2019

Appeal from the Order Entered February 28, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005486-2013

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
EVAN DAVIS :
:
Appellant : No. 1379 EDA 2019

Appeal from the PCRA Order Entered April 23, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005486-2013

BEFORE: SHOGAN, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY SHOGAN, J.: **FILED AUGUST 31, 2020**

Appellant, Evan Davis, timely appeals *pro se* from the February 28, 2019

denial of his Post-Conviction-Relief-Act ("PCRA") petition, 42 Pa.C.S. §§ 9541–

9546, docketed at 803 EDA 2019, and the April 23, 2019 dismissal of his

"OPPOSITION NUNC PRO TUNC" to the PCRA court's Pa.R.Crim.P. 907 notice,

docketed at 1379 EDA 2019.[1]  For the reasons that follow, we affirm both

appeals.

We previously summarized the facts and initial procedural history of the

case as follows:

> [A] jury convicted Appellant of third-degree murder, criminal conspiracy, and related weapons charges [of carrying a firearm without a license and carrying a firearm on a public street in Philadelphia.[2]]. . . .
>
> Appellant was charged with the aforementioned offenses in connection with the February 6, 2013 shooting death of [Khiry] Harris ("the victim").  On that night, Appellant and his brother, Edwin Davis[,] were contacted by Michelle White, who was romantically involved with Ernest Davis, the brother of Appellant and Edwin Davis.  White told Appellant and Edwin Davis that her father, Paul White[,] had been in a physical altercation with a man named Omar Simmons.  The Davis brothers agreed to come and fight Simmons.
>
> Shortly thereafter, Appellant and his friend "Hasan" arrived at [Michelle] White's home and began cleaning two semi-automatic pistols, using rubber gloves and towels.  Edwin Davis and another unidentified individual arrived approximately twenty minutes later.  Michelle White told the Davis brothers to "take care of some business" and directed them to the apartment complex where Simmons lived.  N.T. 12/23/13, at 14–15.
>
> The Davis brothers asked Richard Boyle[, who lived in the same apartment complex as Simmons,] to accompany them to Simmons' apartment.  Boyle knocked on Simmons' door as

---

[1]  On June 5, 2019, Appellant requested consolidation of the appeals from the orders of February 28, 2019, and April 23, 2019.  Before these cases were assigned to this panel, this Court denied consolidation and ordered, "The parties are directed to file one brief listing both Docket Number 803 EDA 2019 and Docket Number 1379 EDA 2019 in the caption."  Order, 7/3/19, at 1.  For this reason, we address both appeals together.

[2]  18 Pa.C.S. §§ 2502(c), 903(c), 6106(a)(1), and 6108, respectively.

Simmons would not have recognized him. When no one answered the door, the Davis brothers fired multiple gunshots through the door, striking the sleeping victim, who had no involvement in the fight between Paul White and Simmons. The victim died as a result of two gunshot wounds to the torso.

Officers responded to reports of the shooting and investigated the scene of the crime. The next day, Appellant was implicated in the victim's death[,] as Michelle White and Richard Boyle gave statements to the police identifying the Davis brothers as the shooters. As a result of White's statement, police then investigated White's home where they recovered four latex gloves from a wastebasket. The gloves were submitted to the Criminalistics Laboratory for DNA testing.

After Appellant, Edwin Davis, Paul White, and Michelle White were charged in connection with the victim's murder, Michelle White pled guilty to third-degree murder and conspiracy on December 23, 2013. As a part of this agreement, Michelle White agreed to testify against Appellant and his co-conspirators at a joint trial. . . .

Eleven days before trial was set to begin, on June 18, 2015, the prosecutor learned that police had recovered the latex gloves from Michelle White's apartment that were believed to be used by Appellant and his cohort to clean the guns and bullets used to commit the victim's murder. The prosecutor was unaware that the gloves had been recovered[,] as this evidence was not documented in the investigation of the murder scene by the assigned detective, but [was] recorded by a different officer in a separate crime scene report.

The prosecutor immediately notified defense counsel of this finding and sent her the property receipt and photographs of the gloves. On June 19, 2015, the prosecutor obtained a court order for a sample of Appellant's DNA to determine if the DNA testing of the gloves matched Appellant's sample. Three days before trial was scheduled to begin, on June 26, 2015, the prosecutor received the laboratory report which revealed that there was substantial likelihood that Appellant's DNA was on the gloves.

On June 27, 2015, Appellant filed a motion to exclude the DNA evidence or to grant a continuance. The trial court denied this motion, declining to exclude the evidence as it found the

prosecutor had not deliberately withheld the evidence. In addition, the trial court was reluctant to grant a continuance, which would require a severance of Appellant's case from his co-conspirators' trial. The prosecution opposed Appellant's request for a continuance as the trial court's refusal to continue the entire joint trial would force the Commonwealth to prosecute Appellant and his co-defendants in separate trials.

The trial court denied the motion for a continuance and provided Appellant funding to obtain his own DNA expert. The trial court noted that the Commonwealth faced the risk of having to retry Appellant a second time if the defense expert disagreed with the DNA analysis. Further, the trial court indicated that if Appellant were convicted and subsequently received a contradictory opinion from his DNA expert, he could file a motion for a new trial. The prosecutor agreed with this remedy, asserting that the expert report he received was "such a conservative estimate that he would be shocked if another DNA lab disagrees." N.T. 6/29/15, at 14.

On June 29, 2015, Appellant proceeded to a jury trial, at which the Commonwealth presented the testimony of Boyle and Michelle White, who admitted they witnessed Appellant and Edwin Davis commit the murder. Marlietta Cowan also testified for the prosecution, indicating that she saw Appellant and a cohort clean their guns and bullets while wearing latex gloves at Michelle White's home. The trial court permitted the Commonwealth to admit the DNA evidence from the latex gloves. Bryne Strother, an expert in DNA analysis, had concluded that Appellant's DNA was found on three of the eight samples tested. At the conclusion of the trial, the jury convicted Appellant of third-degree murder, conspiracy, and related firearms charges.

On August 7, 2015, Appellant filed a motion for a new trial based on the assessment of defense DNA expert, Arthur W. Young. After the trial court requested and received an additional report from Young, who opined that the DNA results were inconclusive, the trial court granted Appellant a new trial in an order dated January 4, 2016.

On February 18, 2016, Appellant filed a motion to dismiss the charges and bar retrial based on double jeopardy principles. The trial court held a hearing, at which the prosecutor testified that he was not aware that police had recovered the gloves until

June 2015, when he was preparing for trial. He immediately informed defense counsel of this discovery, was able to expedite the DNA testing, and sent the laboratory report to defense counsel when it became available.

After consideration of this testimony, the trial court denied Appellant's motion to dismiss as it found that the delay in obtaining the DNA testing was attributable to human error and further noted that the prosecutor made a good faith effort to rectify the situation once the error was discovered. As the trial court found that the prosecutor did not attempt to deny Appellant a fair trial, it reasoned that Appellant's motion was frivolous. Notes of Testimony (N.T.), 7/18/16, at 163. Appellant did not appeal this finding of frivolousness by filing a Petition for Review in this Court along with a request for a stay. *See Commonwealth v. Orie*, 610 Pa. 552, 22 A.3d 1021, 1027 (2011) (providing that a defendant may obtain preliminary appellate review of a trial court's finding that the defendant's pretrial double jeopardy claim is frivolous by filing a petition for review in the Superior Court along with a request for a stay).

Instead of seeking preliminary appellate review of the denial of his motion to bar retrial, Appellant proceeded to trial at which a jury again convicted Appellant of third-degree murder, conspiracy, and related weapons charges. On the same day, the trial court sentenced Appellant to twenty to forty years' incarceration on the murder charges and concurrent sentences on the remaining charges. Both parties filed motions for reconsideration, which the trial court denied.

*Commonwealth v. Davis*, 178 A.3d 139, 2795 EDA 2016 (Pa. Super., filed September 7, 2017) (unpublished memorandum at *1–6).

Appellant filed a timely notice of appeal, raising the sole issue "whether the trial court erred in denying his pretrial motion to bar a retrial on double jeopardy grounds." *Davis*, 2795 EDA 2016 (unpublished memorandum at *6) (footnote omitted). Therein, we concluded that "the trial court did not err in denying Appellant's motion to bar retrial on double jeopardy grounds." *Id.* at

*10.[3] Our Supreme Court denied further review. **Commonwealth v. Davis**, 181 A.3d 1079, 459 EAL 2017 (Pa. filed February 14, 2018).

Appellant, *pro se*, timely filed a PCRA petition on September 7, 2018, asserting claims of trial counsel's ineffectiveness. Counsel was appointed, who thereafter filed a motion to withdraw as counsel and a no-merit letter pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*), on January 9, 2019. Appellant filed a *pro se* supplemental PCRA petition on January 23, 2019, and on January 24, 2019, the PCRA court issued a Pa.R.Crim.P. 907 notice of intent to dismiss the petition. Appellant, *pro se*, filed an amended PCRA petition on February 5, 2019. Appellant did not file a response to the PCRA court's Rule 907 notice. On February 28, 2019, the PCRA court permitted counsel to withdraw and dismissed Appellant's PCRA petition. Appellant timely filed a *pro se* notice of appeal on March 14, 2019. The PCRA court did not order compliance with Pa.R.A.P. 1925(b) but did file an opinion pursuant to Rule 1925(a).

_____

[3] In addressing the issue, we concluded that although Appellant did not seek preliminary appellate review of the trial court's finding that his motion to bar a retrial on double jeopardy grounds was frivolous, he was entitled to appellate review on the merits of his claim on direct appeal following retrial. **Commonwealth v. Brady**, 508 A.2d 286, 291 (Pa. 1986), "holding modified by **Orie**, 22 A.3d at 1025." **Davis**, 2795 EDA 2016 (unpublished memorandum at *6 n.1).

On April 9, 2019, Appellant filed a document entitled, "PETITIONER'S OPPOSITION NUNC PRO TUNC TO RESPOND TO NOTICE OF INTENTION TO DISMISS DUE TO APPOINTED COUNSELOR LAUREN WIMMER'S FAILURE TO FILE A RESPOND [sic] TO PA.R.CRIM.P.907." The PCRA court concluded it was without jurisdiction to address the *nunc pro tunc* filing, which it stated was either an untimely response to its Pa.R.Crim.P. 907 notice of intent to dismiss Appellant's PCRA petition or a subsequent PCRA petition. Order, 4/23/19, at 1. Thus, the PCRA court dismissed the filing, and Appellant filed a notice of appeal, docketed in this Court as 1379 EDA 2019. As noted *supra*, this Court denied Appellant's request to consolidate the appeals but permitted the parties to file one brief addressing both appeals. We address both appeals in this Memorandum.

Regarding the appeal docketed at 1379 EDA 2019, we first note that the PCRA court was incorrect in opining that Appellant's April 9, 2019 document could be identified as a subsequent PCRA petition. Order, 4/23/19, at 1. We have stated:

> The purpose behind a Rule 907 pre-dismissal notice is to allow a petitioner an opportunity to seek leave to amend his petition and correct any material defects, the ultimate goal being to permit merits review by the PCRA court of potentially arguable claims. The response is an opportunity for a petitioner and/or his counsel to object to the dismissal and alert the PCRA court of a perceived error, permitting the court to "discern the potential for amendment." **The response is not itself a petition** and the law still requires leave of court to submit an amended petition. Hence, we conclude that **a response to a notice of intent to dismiss is not a second or subsequent petition**.

*Commonwealth v. Rykard*, 55 A.3d 1177, 1189 (Pa. Super. 2012) (internal citations omitted) (emphases added).

Rather, the filing was an untimely response[4] to the PCRA court's Rule 907 notice. Because Appellant previously had filed an appeal to this Court, the PCRA court correctly decided that it did not have jurisdiction. *Commonwealth v. Wooden*, 215 A.3d 997, 999 (Pa. Super. 2019) ("[T]he timeliness of Appellant's notice of appeal implicates this Court's jurisdiction") (quoting *Commonwealth v. Crawford*, 17 A.3d 1279, 1281 (Pa. Super. 2011)). Our Supreme Court has stated, "The law is clear that a court may modify or rescind any order within 30 days after its entry, **if no appeal has been taken**. 42 Pa.C.S. § 5505; Pa.R.A.P. 1701(a). **Thus, where a Notice of Appeal has been filed, the trial court cannot act further in the matter**." *Commonwealth v. Klein*, 781 A.2d 1133, 1135 (Pa. 2001) (emphases added). Because Appellant filed an appeal on March 14, 2019, from the order dismissing his PCRA petition, the PCRA court was without jurisdiction to address Appellant's *nunc pro tunc* response. Therefore, we affirm the appeal at 1379 EDA 2019.

Appellant raises the following *verbatim* issues in his appellate brief, without distinguishing which issues relate to which appeal; the Commonwealth, as well, has filed a single, identical brief at both docket

---

[4] **See** Pa.R.Crim.P. 907(1) ("The defendant may respond to the proposed dismissal within 20 days of the date of the notice.").

numbers without any differentiation. We address the issues as they relate to

the appeal docketed at 803 EDA 2019:

> 1) DID THE PCRA COURT ERR IN CONCLUDING THAT PETITIONER HAD ALREADY PREVIOUSLY LITIGETED COLLATERAL ESTOPPEL PRINCIPLES CLAIM.
>
> 2) WHETHER THE PCRA COURT WAS IN ERR FOR FAILING TO ORDER AN EVIDENTIARY HEARING, WERE PETITIONER RAISED MATERIAL ISSUES OF FACTS;
>
>> A) DENYING PETITIONER'S NEWLY DISCOVERED EVIDENCE AND BARDY CLAIM, WERE PROSECUTOR'S FAILED TO TURNOVER/DISCLOSE MENTAL HEALTH REPORT OF CO-DEFENDANT "MICHELLE WHITE".
>
> 3) DID THE PCRA COURT ERR IN FAILING TO HEAR PETITIONER'S POSITION, THAT THE PROSECUTOR FAILED TO DISCLOSE TACIT AGREEMENT OF FAVORABLE TREATMENT TO CHIEF WITNESS.
>
> 4) WAS THE PCRA COURT IN ERR FOR FAILING TO ANSWER PETITIONER'S BRADY CLAIM;
>
>> A) THAT PROSECUTION FAILED TO TURNOVER/DISCLOSE LETTER'S THAT WAS RETRIEVED BY THEIR OFFICE.
>
> 5) DID THE PCRA COURT ERR IN CONCLUDING THAT PETITIONER SENTENCE WAS LAWFUL, RECEIVING THE MAXIMUM SENTENCE FOR THIRD DEGREE MURDER WITH NO PROIR RECORD SCORE AND DID NOT GIVE SPECIFIC REASON FOR THE MAXIMUM SENTENCE.
>
> 6) DID THE PCRA COURT ERR IN CONCLUDING THAT PETITIONER'S TRIAL COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO FILE PRETRIAL SUPPESSION MOTIONS.
>
> 7) DID THE PCRA COURT ERR IN CONCLUDING THAT PETITIONER'S TRIAL COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO OBJECT TO IMPROPER QUESTIONING BY PROSECUTION.

8) DID THE PCRA COURT ERR IN CONCLUDING THAT PETITIONER'S TRIAL COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO OBJECT TO COMMONWEALTH WITNESS TESTIMONY.

9) DID THE PCRA COURT ERR IN CONCLUDING THAT PETITIONER'S TRIAL COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO CHALLENGE THE CREDIBILITY OF WITNESS "RICHARD BOYLE" IDENTIFICATION TESTIMONY.

1) DID THE PCRA COURT ERR FOR FAILING TO APPOINT NEW PCRA COUNSELOR IN PETITIONER'S FIRST TIMELY FILED PCRA PETITION BASE ON PCRA COUNSELOR "LAUREN A. WIMMER'S INADEQUATE" NO-MERIT LETTER" THAT DEPRIVED PETITIONER OF HIS FUNDAMENTAL AND SUBSTANTIVE RIGHTS.

Appellant's Brief at 4–5.

When reviewing the propriety of an order denying PCRA relief, we consider the record in the light most favorable to the prevailing party at the PCRA level. *Commonwealth v. Mason*, 130 A.3d 601, 617 (Pa. 2015); *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*). This Court is limited to determining whether the evidence of record supports the conclusions of the PCRA court and whether the ruling is free of legal error. *Commonwealth v. Robinson*, 139 A.3d 178, 185 (Pa. 2016). These errors include a constitutional violation or ineffectiveness of counsel, which "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Cousar*, 154 A.3d 287, 296 (Pa. 2017); 42 Pa.C.S. § 9543(a)(2). The PCRA court's findings will not be disturbed unless there is no support for them in the certified record. *Commonwealth v. Lippert*, 85 A.3d 1095, 1100 (Pa. Super. 2014).

- 10 -

Appellant first contends that the trial court erred in determining that the Commonwealth could try Appellant a second time in violation of double jeopardy. Appellant's Brief at 15. This claim was previously litigated in Appellant's direct appeal. *See Davis*, 2795 EDA 2016 (unpublished memorandum at *6–10). Therein, we concluded that "the trial court did not err in denying Appellant's motion to bar retrial on double jeopardy grounds." *Id.* at *10. Our Supreme Court denied further review. *Davis*, 459 EAL 2017. Thus, no relief is due. *See Commonwealth v. Keaton*, 45 A.3d 1050, 1060 (Pa. 2012) (An issue is previously litigated and not eligible for PCRA relief pursuant to 42 Pa.C.S. § 9543(a)(3) if the highest appellate court in which [Appellant] could have had review as a matter of right has ruled on the merits of that issue.); *see also Commonwealth v. Spotz*, 18 A.3d 244, 281 (Pa. 2011) (recognizing that a claim that has been previously litigated is not cognizable under the PCRA).

In issues 2–4, Appellant asserts that the prosecutor violated *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding exculpatory information. Appellant's Brief at 26. Appellant contends that 1) he was entitled to review Michelle White's neuropsychological evaluation prepared for her sentencing; 2) the prosecutor withheld information that Ms. White testified in exchange for a lenient sentence; and 3) he was entitled to review letters from prior co-defendant Edwin Davis to Michelle White, wherein Edwin accused her of lying. Appellant's Brief at 26–32, 33–36, and 36–39. Because these issues could

have been raised in Appellant's direct appeal but were not, they are waived. 42 Pa.C.S. § 9543(a)(3). ***Commonwealth v. Lambert***, 797 A.2d 232, 240 (Pa. 2001) (PCRA petitioner's issues that could have been raised on direct appeal but were not, are waived under 42 Pa.C.S. § 9544(b)); 42 Pa.C.S. § 9543(a)(3) (instructing that, to be entitled to PCRA relief, an appellant must establish, *inter alia*, that his claims have not been waived).

Appellant maintains in issue 5 that he received an illegal sentence because the trial court improperly applied a deadly-weapon enhancement, which he contends is "illegal under ***Alleyne v. United States***," 570 U.S. 99 (2013). Appellant's Brief at 40. Appellant inartfully claims that the trial court sentenced him to an illegal mandatory minimum sentence, and the court's application of the deadly-weapon enhancement violated his constitutional rights. ***Id.*** at 36-41. He maintains that ***Alleyne*** required the trial court to submit the application of the deadly weapon enhancement to the jury because the deadly weapon enhancement is an "element" that increased the penalty for his crimes. ***Id.*** at 42.

Appellant has raised a challenge to the legality of his sentence. We "review the legality of sentence *de novo* and our scope of review is plenary." ***Commonwealth v. Foust***, 180 A.3d 416, 422 (Pa. Super. 2018) (citation omitted).

In ***Alleyne***, the United States Supreme Court held that, other than the fact of a prior conviction, any fact that increases the penalty for a crime

beyond the prescribed statutory minimum must be submitted to a jury and proven beyond a reasonable doubt. *Alleyne*, 570 U.S. at 103. Later, this Court in *Commonwealth v. Buterbaugh*, 91 A.3d 1247 (Pa. Super. 2014), expressly held that the imposition of sentencing enhancements does not implicate *Alleyne*. *Buterbaugh*, 91 A.3d at 1270 n.10. The deadly-weapon enhancement imposed on Appellant's sentence is not a mandatory minimum sentence; rather, it merely raises the recommended sentence under the sentencing guidelines. *Id.* Appellant is not entitled to relief on this claim.

Appellant's final issues aver the ineffective assistance of trial counsel. To plead and prove ineffective assistance of counsel, a petitioner must establish: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act. *Commonwealth v. Treiber*, 121 A.3d 435, 445 (Pa. 2015). A claim of ineffectiveness will be denied if [Appellant]'s evidence fails to meet any one of these prongs. *Commonwealth v. Martin*, 5 A.3d 177, 183 (Pa. 2010). Counsel is presumed to have rendered effective assistance of counsel. *Commonwealth v. Montalvo*, 114 A.3d 401, 410 (Pa. 2015). Moreover, we have explained that trial counsel cannot be deemed ineffective for failing to pursue a meritless claim. *Commonwealth v. Loner*, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*).

Appellant contends that trial counsel was ineffective for failing to: 1) file a motion to suppress cellular telephone records and latex gloves; 2) object to

the Commonwealth's impeachment of Appellant's DNA expert; 3) object to Richard Boyle's testimony and/or request a competency hearing for Mr. Boyle; and 4) file a motion to suppress Mr. Boyle's identification of Appellant. Appellant's Brief at 44–46, 48–49, 50–57, and 58–62, respectively. None of the issues has arguable merit.

First, Appellant suggests trial counsel was ineffective for failing to "look into" whether Marlita Cowan lived at 5427 Walker Street, the house where the gloves were found. Appellant's Brief at 44. He posits that trial counsel should have filed a motion to suppress because Ms. Cowan had no authority to consent to a search of the property. *Id.*

The record reveals that Ms. Cowan, her fiancé and her children, along with Michelle White, her children, and Appellant's mother and boyfriend all lived at 5427 Walker Street. N.T., 7/19/16, at 99–101. Therefore, Ms. Cowan had apparent and actual authority to consent to the search of the home. *Commonwealth v. Simmen*, 58 A.3d 811, 816 (Pa. Super. 2012) ("Both the federal and Pennsylvania [C]onstitutions permit a third party [who has authority to] consent to a search" of a home); *Commonwealth v. Strader*, 931 A.2d 630, 634 (Pa. 2007) (Police must obtain consent from a third party "with apparent authority over the area to be searched" where "police reasonably believe a third party has authority to consent."). Any suppression motion on this basis lacked merit and properly would have been denied.

*Commonwealth v. Johnson*, 179 A.3d 1105, 1115 (Pa. Super. 2018) (Counsel is not deemed ineffective for failing to raise meritless issue).

Appellant next asserts counsel was ineffective for failing to file a motion to suppress calls/text messages from a cellular telephone corresponding to the number 267-309-1232. Appellant's Brief at 46–47. Importantly, Appellant acknowledges that he had no possessory interest "in that cell phone." *Id.* at 46. In order to succeed in a suppression motion on this basis, Appellant must have been able to prove a reasonable expectation of privacy to enforce. *Commonwealth v. Enimpah*, 106 A.3d 695, 701 (Pa. 2014). Without a possessory interest in the cellular telephone, Appellant had no reasonable expectation of privacy in its contents. *Commonwealth v. Kane*, 210 A.3d 324, 330 (Pa. Super. 2019) (individual cannot establish a reasonable expectation of privacy where he lacks, *inter alia*, "control, ownership, or **possessory interest**.") (emphasis added). Thus, the motion would have lacked merit, and counsel cannot be found ineffective for failing to raise a meritless issue. *Johnson*, 173 A.3d at 1115.

Appellant next contends that trial counsel was ineffective for failing to object to the prosecutor's question impeaching Appellant's expert witness. Appellant's Brief at 48–49. This claim lacks merit. The contention is based on the following question posed to Arthur Young, Appellant's DNA expert witness, by the Commonwealth: "Would you agree with me, sir, that if you don't disagree with the Philadelphia's Lab [sic], you don't get paid in your

business? You don't get paid, do you?" N.T., 7/22/16, at 53; Appellant's Brief at 49. Mr. Young replied that he would file an invoice in the future for his services. N.T., 7/22/16, at 54–55. We rely on the following explanation by the trial court in rejecting this claim:

> Impeachment of an expert witness by demonstrating partiality is permissible. It is proper to ask an expert witness his fee for testifying, so long as the evidence impeaching an expert witness is relevant to the main issue before the court. *Flenke v. Huntington*, 111 A.3d1197, 1204 (Pa. Super. 2015) (citing *J.S. v. Whetzel*, 860 A.2d 1112 (Pa. Super. 2004)).
>
> Here, Arthur Young, an expert in Forensic Biology, was called on behalf of [Appellant], and testified that the mixed nature of the samples analyzed by the Commonwealth prevented it from determining, to any degree of certainty, the odds of whether [Appellant's] DNA was included in the sample. To counter this, the prosecutor suggested that, if Young did not disagree with City of Philadelphia lab, he would not be paid for his trial testimony. N.T. 7/22/2016 at 53-54. This line of questioning was relevant to the expert's bias regarding his conclusions, and was permissible under [the] law. Had trial counsel objected to this line of questioning, this [c]ourt would have overruled it.
>
> Moreover, [Appellant] fails to demonstrate prejudice. In response to the prosecutor's questioning, Young responded that he had not been paid for his work in the instant matter or any other of his cases in Philadelphia, and that he served in his capacity as an independent analyst. *Id.* at 54-55, 66. At no point during cross-examination did Young insinuate that his payment was contingent on reaching an alternate conclusion than the Commonwealth's expert or upon the results of the trial. Accordingly, [Appellant] fails to demonstrate prejudice.

PCRA Court Opinion, 2/28/19, at 14.

Appellant next avers that trial counsel was ineffective for failing to object to Richard Boyle's testimony at the preliminary hearing that he drank alcohol the morning of the preliminary hearing, and at Appellant's first trial, where

Mr. Boyle stated he was an alcoholic. He further maintains counsel should have requested at the preliminary hearing that Mr. Boyle undergo a competency hearing. Appellant's Brief at 51, 56 (citing N.T. (Preliminary Hearing), 4/24/13, at 62–63; N.T. (Trial), 7/20/16, at 84, 86, 87).

"Once a defendant has gone to trial and has been found guilty of the crime or crimes charged, any defect in the preliminary hearing is rendered immaterial." **Commonwealth v. Sanchez**, 82 A.3d 943, 984 (Pa. 2013); **Commonwealth v. Stultz**, 114 A.3d 865, 882 (Pa. Super. 2015) (same). Appellant also argues that counsel should have objected to Mr. Boyle's trial testimony[5, 6] that he was an alcoholic, maintaining that Mr. Boyle was intoxicated when he spoke to police. Appellant's Brief at 52. The record actually supports a contrary fact—that Mr. Boyle was sober when he spoke to police and at trial. N.T., 7/1/15, at 24. Indeed, Mr. Boyle so testified concerning his sobriety. **Id.** Moreover, Mr. Boyle identified Appellant at trial as one of the shooters; therefore, the competency at the time of his prior

_____

[5] In his brief, Appellant erroneously alleges that the objectionable testimony was read into the record during his second trial at N.T., 7/20/16, at 84, 86–87. However, such testimony does not appear on those pages. The original testimony from Appellant's first trial appears at N.T., 7/1/15, at 27.

[6] Richard Boyle was deceased at the time of Appellant's retrial. N.T., 7/19/16, at 36. As noted by the PCRA court, "The former testimony of a witness in a criminal proceeding[,] who has since died[,] is competent evidence admissible in a subsequent trial of the same criminal issue. 42 Pa.C.S. § 5917; Pa.R.E. 804.1." PCRA Court Opinion, 2/28/19, at 9.

statement is irrelevant. *Id.* at 19. Because any objection would have been denied, the issue lacks merit.

Appellant posits that trial counsel was ineffective for failing to object to the Commonwealth's questioning of Special Agent Micah Spotwood, who was assigned to the Pennsylvania Attorney General, Philadelphia Gun Violence Task Force, formerly employed as a Philadelphia Police Detective, concerning whether Mr. Boyle was intoxicated at the time the detective interviewed him. Appellant's Brief at 56–57; N.T., 7/20/16 Vol. 1, at 66–67. Appellant argues that as a fact witness, such testimony by Agent Spotwood was improper. Appellant's Brief at 57. Appellant objects to the following exchange between the Commonwealth and Agent Spotwood:

> Q. When you spoke with Mr. Boyle, can you tell the members of the jury, tell us his condition? How did he appear to you?
>
> A. He appeared normal to me, and he appeared as if he was in good enough condition to give an interview about the incident.
>
> Q. Did he appear intoxicated?
>
> A. No, he did not.
>
> Q. Have you in the course of working all those years in the Homicide Division and as a police officer, have you encountered people that appeared under the influence of alcohol or drugs?
>
> A. Yes, I have.
>
> * * *
>
> Q. If Mr. Boyle was intoxicated when you came into contact with him, would you have been able to tell that?
>
> A. I would be able to tell, yes, sir.

- 18 -

N.T., 7/20/16 Vol. 1, at 71–72.

"Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." **Commonwealth v. Tyson**, 119 A.3d 353, 357 (Pa. Super. 2015). "Accordingly, a ruling admitting evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous." **Commonwealth v. Berry**, 172 A.3d 1, 3 (Pa. Super. 2017) (citation omitted). "Generally, lay witnesses may express personal opinions related to their observations on a range of subject areas based on their personal experiences that are helpful to the factfinder." **Id.** at 3–4 (citations omitted).

Pennsylvania Rule of Evidence 701, Opinion Testimony by Lay Witnesses, provides as follows:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pa.R.E. 701.

Agent Spotwood's testimony clearly was proper under this rule. Further, a lay witness may testify as to whether an individual appeared intoxicated.

*Commonwealth v. Bowser*, 624 A.2d 125, 133 (Pa. Super. 1993). In *Bowser*, a passing motorist stopped and rendered aid at the scene of an accident. At Mr. Bowser's trial for driving under the influence of alcohol, the motorist testified that a strong odor of alcohol emanated from Mr. Bowser, Mr. Bowser was belligerent to attempts to remove him from the vehicle, and force was necessary to accomplish that task. *Id.* at 133. Finally, he also testified that he previously had observed intoxicated individuals. *Id.* On appeal to this Court, Mr. Bowser contested the motorist's opinion as improperly embracing an ultimate issue in the case and as not being supported by the requisite foundation. We rejected this claim, finding that the motorist's opinion was clearly based upon personal observations and his prior experience with intoxicated individuals. *Id.* Thus, a proper foundation was laid, and, therefore, the trial court did not err in admitting the opinion testimony.

We also note that no toxicology report is required to support or negate intoxication, contrary to Appellant's assertion. Appellant's Brief at 57; *Bowser*, 624 A.2d 125. Here, the prosecutor laid the necessary foundation and Special Agent Spotwood testified, based on his experience with people who were under the influence, that Mr. Boyle "appeared normal." N.T., 7/20/16 Vol. 1, at 71. Thus, any objection would have been meritless, and counsel is not ineffective for failing to make a meritless objection. *Commonwealth v. Jones*, 912 A.2d 268, 281 (Pa. 2006).

Appellant's final allegation of trial counsel's ineffectiveness concerns his claim that trial counsel should have moved to suppress Mr. Boyle's identification of Appellant. Appellant's Brief at 58. Appellant's support for this claim is reference to testimony at his preliminary hearing. *Id.* at 58–60. Once again, at this point, any defect in the preliminary hearing is immaterial. *Sanchez*, 82 A.3d at 984; *Stultz*, 114 A.3d at 882.

Appellant's final issue asserts PCRA counsel's ineffectiveness in filing a no-merit letter because she did not discuss all of the issues Appellant wanted her to raise. Appellant's Brief at 66. This issue is waived because Appellant fails to set forth issues allegedly foregone, argue their merit, and/or show that he was prejudiced. "It is not this Court's responsibility to comb through the record seeking the factual underpinnings of an appellant's claim." *Commonwealth v. Samuel*, 102 A.3d 1001, 1005 (Pa. Super. 2014). It is not this Court's responsibility to develop an argument for an appellant or scour the record to find evidence to support an argument. *Commonwealth v. Cannavo*, 199 A.3d 1282, 1289 (Pa. Super. 2018).

For all of these reasons, and following our careful review of the record, we conclude that the PCRA court properly dismissed Appellant's PCRA petition.

Order affirmed at appeal 803 EDA 2019. Order affirmed at appeal 1379 EDA 2019.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/31/20